NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1752-12T3

HACKENSACK RIVERKEEPER,
INC. and NY/NJ BAYKEEPER,

     Appellants,

v.

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

     Respondent.

APPROVED FOR PUBLICATION

December 22, 2015

APPELLATE DIVISION

Argued May 19, 2015 — Decided December 22, 2015

Before Judges Messano, Ostrer and Tassini.

On appeal from the adoption of N.J.A.C. 7:7 by the Department of Environmental Protection.

Christopher Len argued the cause for appellants (Pringle, Quinn, Anzano, P.C., attorneys; Mr. Len and Edward Bonanno, on the brief; Andrea Leshak, on the supplemental brief).

Kristina Miles, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Miles, on the briefs).

Litwin & Provence, L.L.C., attorneys for amicus curiae American Littoral Society, Inc. (Gordon N. Litwin and Andrew J. Provence, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

In <u>Borough of Avalon v. New Jersey Department of Environmental Protection</u>, 403 <u>N.J. Super.</u> 590, 595 (App. Div. 2008), <u>certif. denied</u>, 199 <u>N.J.</u> 133 (2009) (<u>Avalon</u>), we considered a challenge to certain regulations adopted in 2007 by the New Jersey Department of Environmental Protection (DEP), "referred to as the Public Access Rules, which substantially expanded [DEP's] authority over public access to beaches and other tidal waterways." We found the regulations were "not statutorily authorized and therefore invalid[]." <u>Id.</u> at 597. In response, DEP embarked upon another round of rulemaking, culminating in the 2012 adoption of new Public Access Rules (the Rules). 44 <u>N.J.R.</u> 2559(a) (Nov. 5, 2012).

Hackensack Riverkeeper, Inc., and NY/NJ Baykeeper, two non-profit organizations (collectively, appellants), quickly filed this appeal. We granted a motion by the American Littoral Society, Inc. (ALS), to appear as amicus curiae. The three organizations' professed missions include the conservation of coastal areas and the promotion of public and community access thereto and, in the case of appellants, the waters, watersheds and wetlands of this State.

Appellants argue that DEP has again arrogated to itself the management of lands held in public trust, which power is reserved to the Legislature and has not been delegated to DEP. They also argue the Rules are preempted by, or improperly infringe upon, powers reserved to the State's municipalities. Appellants further contend that the Rules are not authorized by the Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:19-1 to -21, or any other statute.

DEP contends that the Rules are authorized pursuant to the public trust doctrine, and the agency has been implicitly recognized as the proper governmental authority to manage lands held in public trust. Alternatively, DEP contends that CAFRA authorizes promulgation of the Rules. The agency also asserts that the Rules encourage cooperation with municipalities that is wholly consonant with the Municipal Land Use Law (the MLUL), N.J.S.A. 40:55D-1 to -163. ALS similarly argues that the Legislature has vested DEP with the authority to adopt regulations necessary to promote and protect the waterfront.

Since the appeal was argued, DEP again revised the Rules. See 47 N.J.R. 1392(a) (July 6, 2015). We asked appellants and DEP to address these revised Rules and their impact, if any, on the issues initially raised. Both sides assert that the

revisions merely re-numbered the Rules and effectuated no substantive changes.

We have considered the arguments in light of the record and applicable legal principles. Some limited provisions of the Rules could fall "within the fair contemplation of the delegation of [an] enabling statute," CAFRA. In re N.J.A.C. 7:1B-1.1 et seq., 431 N.J. Super. 100, 116 (App. Div.) (citation omitted), certif. denied, 216 N.J. 8 (2013). However, the Rules apply to many municipalities that are not subject to CAFRA, because that statute only applies to certain municipalities. Moreover, the Rules far exceed the Legislature's limited delegation of authority to DEP under CAFRA to regulate "land uses in the coastal zone." Avalon, supra, 403 N.J. Super. at 601. We also agree with appellants that the Rules are not authorized by any other legislative enactment or by the Legislature's delegation of powers to DEP pursuant to the public trust doctrine. We are constrained, therefore, to invalidate the Rules.

## I.

In their latest iteration, the Rules amend DEP's Coastal Zone Management (CZM) regulations, N.J.A.C. 7:7. The CZM regulations "establish[] the rules . . . regarding the use and development of coastal resources[,]" and "are used in reviewing

applications for coastal permits under [CAFRA]" and other statutes. N.J.A.C. 7:7-1.1(a) (emphasis added). The CZM regulations list "eight broad coastal goals," including "[m]eaningful public access to and use of tidal waterways and their shores." N.J.A.C. 7:7-1.1(c). The CZM regulations apply to all DEP "actions and decisions," N.J.A.C. 7:7-1.2(a), regarding the "coastal zone," defined as including not only geographic areas subject to CAFRA, but also all other coastal waters and tidal wetlands. N.J.A.C. 7:7-1.2(b).

In particular, appellants' challenge focuses on N.J.A.C. 7:7-9.48, the public trust rights rule, and N.J.A.C. 7:7-16.9, the public access rule (before DEP's July 2015 re-codification, N.J.A.C. 7:7E-3.50 and N.J.A.C. 7:7E-8.11, respectively).[1] Pursuant to N.J.A.C. 7:7-9.48(b), public access to "lands and waters subject to public trust rights" must be provided in accordance with N.J.A.C. 7:7-16.9, and any development "that does not comply with N.J.A.C. 7:7-16.9 . . . is discouraged . . . ." N.J.A.C. 7:7-16.9, in turn, encourages, but does not require, municipalities to create Municipal Public Access Plans (MPAPs) that, among other things, identify current public access points and corresponding signage, incorporate parking and other

[1] See 46 N.J.R. 1051(a), 1053-57 (June 2, 2014) (DEP's table cross-referencing the Rules as adopted in 2012 with the changes proposed in 2014 and adopted in 2015).

A-1752-12T3

amenities to the maximum extent practicable, and plan for future public access.  N.J.A.C. 7:7-16.9(c)-(e).

DEP explained in 2012 that the new regulations

> encourage municipalities to take an active role in designing and ensuring public access to beaches and tidal waters in ways that will work best for their respective circumstances. . . .  Under the rules in place prior to this adoption, the Department evaluated public access only when an applicant applied to the Department for a coastal permit and was required to provide public access under those rules.  The adopted rules enhance public access opportunities by encouraging municipalities to work with the Department to develop plans to help ensure that the public's access needs are met in a comprehensive and systematic approach.  The Department will work with the municipalities on development of their access plan, and the plan will be required to meet the goals of the public access rules.
>
> [44 N.J.R. at 2602 (response to comment 234) (emphasis added).]

More than two hundred municipalities are eligible to submit MPAPs.[2]

A municipality, as part of its MPAP implementation strategy, may create its own dedicated Public Access Fund, to which developers contribute in lieu of providing public access onsite.  N.J.A.C. 7:7-16.9(f).  The Rules provide formulae

---

[2] See http://www.state.nj.us/dep/cmp/access/mpamunis.htm  (list of eligible municipalities) (last visited Dec. 1, 2015).

required to be used for the calculation of appropriate contributions based upon the particular development. N.J.A.C. 7:7-16.9(f)(1) and (2).

After public notice and comment, and DEP review and approval, a municipality must incorporate its MPAP into its master plan, see N.J.S.A. 40:55D-5 and -28. N.J.A.C. 7:7-16.9(j). At five-year intervals thereafter, a municipality must provide DEP with a report detailing the status of all projects, an accounting of its dedicated Public Access Fund, and a list of problems and proposed remedies to assure compliance with the MPAP. N.J.A.C. 7:7-16.9(j)(4). Any changes to the MPAP or to the terms of a contribution made to the Public Access Fund must be submitted first to DEP for "review and approval." N.J.A.C. 7:7-16.9(l). In addition, if the municipality fails to implement or comply with its approved MPAP, DEP must "revoke its approval." N.J.A.C. 7:7-16.9(m).

Once an MPAP is adopted as part of a municipality's master plan, "public access required to satisfy the conditions of a coastal permit for development in the municipality for permit applications filed with [DEP] . . . shall be provided in accordance with the [MPAP]." N.J.A.C. 7:7-16.9(k). However, if a municipality does not adopt an MPAP, "public access along and use of the beach and the shores shall be provided" in accordance

with the regulations. N.J.A.C. 7:7-16.9(n). Depending upon the nature and size of any particular commercial or residential development, on-site access must be provided. N.J.A.C. 7:7-16.9(n)(1) and (2). In addition, a municipality must have an approved MPAP before DEP will approve a general permit for beach and dune maintenance. N.J.A.C. 7:7-6.2(b).

During argument, we asked the Deputy Attorney General representing DEP whether municipalities that did not adopt an MPAP could suffer other negative consequences, specifically eligibility for Green Acres funding. See 44 N.J.R. at 2630-32 (comments and responses 464-83). We were assured that they would not. However, we note that DEP's current Green Acres regulations provide:

> (a) The following are ineligible to apply for Green Acres funding:
>
> . . . .
>
> 4. Any local government unit that does not currently provide, or have active plans to provide, public access to the waterfront and to tidally-flowed and dry sand areas subject to the Public Trust Doctrine, consistent with the requirements of the Coastal Zone Management Rules at N.J.A.C. 7:7E—8.11 and governing law.
>
> [N.J.A.C. 7:36-3.2(a)(4) (emphasis added).]

This "carrot-and-stick" approach to secure submission of MPAP applications for approval and municipal compliance

thereafter was publicly acknowledged by DEP. When the Rules were first issued in 2012, the agency declared that there were "adequate incentives for municipalities to want to develop and seek Department approval of [MPAPs]." 44 N.J.R. at 2631 (response to comments 465-68). DEP explained that it was

> not penalizing municipalities which do not have a [MPAP]. These municipalities will still be able to conduct beach and dune maintenance pursuant to an individual permit if they choose to not prepare a Municipal Public Access Plan. The Department believes that this differential treatment is appropriate to encourage the public access benefits that can be achieved through the cooperative planning effort reflected by a Department-approved [MPAP].
>
> [44 N.J.R. at 2606 (response to comment 261).]

DEP's Commissioner called the consequences for municipalities not participating in the MPAP scheme "'the club if we need it.'"[3]

## II.

We set some well-known guideposts that inform our review. "Judicial review of agency regulations begins with a presumption that the regulations are both valid and reasonable[,]" and "the party challenging a regulation has the burden of proving that

---

[3] Jacqueline L. Urgo, N.J. sets in motion letting local decisions rule on beach access, The Philadelphia Inquirer (Apr. 5, 2011), http://articles.philly.com/2011-04-05/news/29384729_1_beach-access-public-access-long-beach-township. The document is contained in DEP's appendix.

the agency's action was arbitrary, capricious or unreasonable." N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012) (citations and internal quotation marks omitted). "[W]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004) (citing In re Distrib'n of Liquid Assets, 168 N.J. 1, 10-11 (2001)).

Accordingly, a challenger must "demonstrat[e] an inconsistency between the regulation and the statute it implements, a violation of policy expressed or implied by the Legislature, an extension of the statute beyond what the Legislature intended, or a conflict between the enabling act and other statutory law that cannot be harmonized." N.J. Ass'n of Sch. Adm'rs v. Cerf, 428 N.J. Super. 588, 596 (App. Div. 2012), certif. denied, 213 N.J. 536 (2013). "While findings of ultra vires actions are disfavored, [o]ur role is to enforce the will of the Legislature because [s]tatutes cannot be amended by administrative fiat." In re Agric., Aquacultural, & Horticultural Water Usage Certification Rules, 410 N.J. Super. 209, 223 (App. Div. 2009) (alterations in original) (citations and internal quotation marks omitted). "[I]f the regulation is

plainly at odds with the statute, we must set it aside." In re Freshwater Wetlands, supra, 180 N.J. at 489.

With these standards in mind, we consider the specific arguments raised on appeal.

A.

Appellants argue that, by invoking the public trust doctrine, DEP has again arrogated to itself the regulation of public access to the State's waterways and shorelines. They contend that unless we are prepared to contradict our decision in Avalon, the result must be the same, and the Rules must be stricken. DEP argues that Avalon has limited application to this case because there we only considered a specific as-applied challenge to two particular provisions of the 2007 regulations that are no longer contained in the Rules. However, we agree with appellants that, absent express authorization from the Legislature, the public trust doctrine alone cannot justify DEP's adoption of the Rules.

The public trust doctrine encompasses the "legal principle that the State holds 'ownership, dominion and sovereignty' over tidally flowed lands 'in trust for the people.'" City of Long Branch v. Jui Yung Liu, 203 N.J. 464, 474 (2010) (quoting Matthews v. Bay Head Improvement Ass'n, 95 N.J. 306, 316-17, cert. denied, 469 U.S. 821, 105 S. Ct. 93, 83 L. Ed. 2d 39

(1984)).  Accord Raleigh Ave. Beach Ass'n v. Atlantis Beach Club, Inc., 185 N.J. 40, 51 (2005); Borough of Neptune City v. Borough of Avon-By-The-Sea, 61 N.J. 296, 304-05 (1972).  The doctrine's principles appear in English common law, and its roots can be traced back to Roman civil law.  Raleigh Ave., supra, 185 N.J. at 51-52; State v. Vogt, 341 N.J. Super. 407, 422 (App. Div.), certif. denied, 170 N.J. 206 (2001).  As a result, a "'State can no more abdicate its trust over property in which the whole people are interested . . . than it can abdicate its police powers.'"  Matthews, supra, 95 N.J. at 319 (quoting Ill. Cent. R.R. v. Illinois, 146 U.S. 387, 453, 13 S. Ct. 110, 118, 36 L. Ed. 1018, 1043 (1892)); E. Cape May Assocs. v. State, Dep't of Envtl. Prot., 343 N.J. Super. 110, 142 (App. Div.) ("the sovereign never waives its right to regulate the use of public trust property"), certif. denied, 170 N.J. 211 (2001).

As the Court has reiterated:

> Like many common-law principles, the public trust doctrine has adapted to the changing conditions and needs of the public it was created to benefit.  Today, public rights in tidal lands are not limited to the ancient prerogatives of navigation and fishing, but extend as well to recreational uses, including bathing, swimming and other shore activities.
>
> [Long Branch, supra, 203 N.J. at 475 (citations and internal quotation marks omitted).]

"Whether natural, or man-made, the beach is an adjunct to ocean swimming and bathing and is subject to the Public Trust Doctrine." Van Ness v. Borough of Deal, 78 N.J. 174, 180 (1978). Therefore, "reasonable access to the sea is integral to the public trust doctrine[, because] without access the doctrine has no meaning." Raleigh Ave., supra, 185 N.J. at 53 (citation omitted). The Court has held that, pursuant to the public trust doctrine, the public's right to access the beach includes "access to and use of privately-owned dry sand areas as reasonably necessary." Matthews, supra, 95 N.J. at 326 (emphasis added).

In Avalon, we considered a municipality's challenge to two provisions of the 2007 rules that required public access to municipal beaches "at all times," and conditioned eligibility for appropriations from the "'Shore Protection Fund,'" N.J.S.A. 13:19-16.1, upon a municipality's agreement to provide additional parking spaces and restrooms, and acquire the land for these facilities by condemnation if necessary. Avalon, supra, 403 N.J. Super. at 595. Regarding the requirement of public access at all times, we noted that the Legislature had specifically granted municipalities the authority to exercise their police powers over publicly-owned lands. Id. at 598 (citing N.J.S.A. 40:48-2). We further observed that the

Legislature had "recognized that seashore municipalities have 'exclusive control' over municipally-owned beaches." Id. at 599 (citing N.J.S.A. 40:61-22.20).[4]  We held:

> In contrast to the express legislative delegation of broad general powers to municipalities to exercise exclusive control over municipally-owned beaches, the Legislature has not delegated any authority to the DEP to preempt or supervise a municipality's operation of its beaches. Moreover, we perceive no basis for implying such authority.  It is the municipality, not the DEP, that owns and operates and

---

[4] N.J.S.A. 40:61-22.20(a) (emphasis added), entitled "Municipal control over beaches, etc.; fees," provides in pertinent part:

> The governing body of any municipality bordering on the Atlantic Ocean, tidal water bays or rivers which owns . . . lands bordering on the ocean, tidal water bays or rivers, or easement rights therein, for a place of resort for public health and recreation and for other public purposes shall have the exclusive control, government and care thereof and of any boardwalk, bathing and recreational facilities, safeguards and equipment, . . . and may . . . make and enforce rules and regulations for the government and policing of such lands, boardwalk, bathing facilities, safeguards and equipment; provided, that such power of control, government, care and policing shall not be construed in any manner to exclude or interfere with the operation of any State law or authority with respect to such lands, property and facilities.

DEP has not asserted that the exercise of municipal authority under this statue is pre-empted by other legislation or by application of the public trust doctrine.

therefore bears responsibility for the management of its beaches.

[*Ibid.*]

Distinguishing "public trust doctrine cases the DEP relie[d] upon," we concluded "the . . . doctrine does not provide any basis for a DEP rule that preempts the statutory authority of municipalities to regulate municipally-owned beaches, including deciding when they shall be open to the public." *Id.* at 600.

We also rejected DEP's assertion that the public trust doctrine justified adoption of the second regulation at issue. *Id.* at 605.

> The essential thrust of the cases dealing with application of the public trust doctrine to municipally-owned beaches has been that a municipality must provide non-residents with the same access to its beaches as its own residents . . . .
>
> However, the Court has never held that the public trust doctrine requires a municipality that owns and operates a beach to provide a specified number of parking spaces and restrooms in proximity to the beach or that the DEP has the authority to impose such requirements upon a municipality. Therefore, we conclude that the public trust doctrine does not provide authorization for the DEP rules imposing these requirements.

[*Ibid.*]

In this case, DEP correctly notes that the Rules do not compel municipalities to do anything, but rather encourage

affected municipalities to cooperate with DEP in planning for access through adoption of an MPAP. DEP argues that the public trust doctrine, as interpreted by the Court, authorizes the agency to act as steward of the State's coastal resources, including assuring public access. See, e.g., N.J.A.C. 7:7-16.9(aa) (describing DEP as "the State entity managing public access along the shore," with "an obligation to ensure" access under the public trust doctrine). However, consistent with our assessment in Avalon, the cases DEP relies upon do not persuade us that the public trust doctrine can serve as the fount of the agency's regulatory power.

For example, DEP claims that in Lusardi v. Curtis Point Property Owners Ass'n, 86 N.J. 217 (1981), the Court recognized the agency "was one of three State entities charged with promoting the State's interest in public access under the [p]ublic [t]rust [d]octrine." DEP further asserts that Lusardi and Matthews demonstrate that "even where the State as a whole holds title to public trust lands, the ability to regulate it has been passed to [] DEP." We disagree.

The Court in Lusardi considered whether a municipal zoning ordinance that prohibited recreational use of privately-owned oceanfront property was "an unreasonable exercise of the zoning power in light of judicial, legislative and executive

pronouncements establishing a statewide policy of encouraging recreational use of dry sand beach areas." Lusardi, supra, 86 N.J. at 222. The Court found expressions of this "statewide policy" in the public trust doctrine, legislation and the coastal development policies promulgated by DEP. Id. at 227-28. However, the Court made clear that "the public trust doctrine [wa]s not directly applicable to th[e] case, which concern[ed] the exercise of zoning power." Id. at 228. To the extent the Court found DEP's regulations were "the most detailed expression of this State's policies concerning the appropriate uses of shoreline resources," it did so with reference to specific statutory powers under CAFRA. Id. at 229.

Similarly, DEP's reliance upon Matthews is misplaced. In Matthews, supra, 95 N.J. at 326, the Court relied exclusively upon the public trust doctrine to conclude that "private landowners may not in all instances prevent the public from exercising its rights under the public trust doctrine[,]" and "[t]he public must be afforded reasonable access to the foreshore as well as a suitable area for recreation on the dry sand." The Court's only mention of DEP's role was in a footnote, recognizing that pursuant to CAFRA, the agency's regulations supported unrestricted access to beaches. Id. at 325 n.8.

Lastly, we reject DEP's claim that <u>Raleigh Avenue</u> recognized the agency's independent regulatory authority pursuant to the public trust doctrine.  Without reciting the tangled facts of the case, it suffices to say that the Court rejected the property owner's claim that DEP "lack[ed] jurisdiction to approve any fees charged" to the public for services associated with the beach.  <u>Raleigh Ave.</u>, <u>supra</u>, 185 <u>N.J.</u> at 60.  However, the Court made clear that it was "the boardwalk pathway over the dunes to the . . . beach [which] qualifies as a development, thereby triggering the DEP's CAFRA jurisdiction over related use of the beach and ocean."  <u>Id.</u> at 61.

The Legislature spoke clearly regarding municipally-owned beaches when it enacted <u>N.J.S.A.</u> 40:61-22.20(a), and municipally-owned property in general, when it enacted <u>N.J.S.A.</u> 40:48-1 (providing that "every municipality" may adopt and enforce ordinances to "[m]anage, regulate and control the . . . property . . . of the municipality").  Case law that has developed regarding the public trust doctrine, including those which have expanded its reach to privately-owned property, do not support DEP's contention that the Legislature implicitly delegated regulatory powers to the agency.  DEP was not

18

authorized to promulgate the Rules under the public trust doctrine.

B.

Appellants next argue that DEP lacks the authority to promulgate the Rules pursuant to CAFRA or any other statute, and, as already noted, that the Rules conflict with the Legislature's specific grant of authority to municipalities to regulate municipally-owned land. DEP counters by arguing the Rules were authorized pursuant to CAFRA.[5] The agency also argues that the Rules do not conflict with the MLUL.

---

[5] We note, however, that DEP's only stated "rationale" for adoption of the Rules was the public trust doctrine. See N.J.A.C. 7:7-9.48(c); N.J.A.C. 7:7-16.9(aa). Additionally, at two points in its brief, in single sentences without any legal argument, DEP cites N.J.S.A. 13:1B-3(e) and N.J.S.A. 13:1D as providing the statutory authority for promulgating the Rules. We have refused to consider such "cursory discussion[s]" of legal arguments not properly raised in separate point headings. Mid-Atlantic Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div.), certif. denied, 207 N.J. 190 (2011). In any event, neither cited statute provides support for DEP's argument. N.J.S.A. 13:1B-3(e) simply provides that as part of his powers, the Commissioner may "[a]dopt, issue and promulgate . . . such rules and regulations as may be authorized by law[.]" N.J.S.A. 13:1D-9 vests DEP with broad powers primarily linked to general functions of conservation, education, environmental and ecological protection and pollution control. There is no mention of DEP's authority to plan for or implement public access to coastal areas.

(1)

Some additional standards govern our consideration of whether the Rules are authorized by CAFRA. "[W]hen a regulation is challenged as contrary to the agency's statutory authority[,] . . . the issue turns on statutory construction." In re Adoption of N.J.A.C. 7:15-5.24(b), 420 N.J. Super. 552, 564 (App. Div.) (citing N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222 (1999)), certif. denied, 208 N.J. 597 (2011). "[O]ur task in statutory interpretation is to discern and effectuate the Legislature's intent." N.J. Dep't of Envtl. Prot. v. Huber, 213 N.J. 338, 365 (2013) (citing Hubner v. Spring Valley Equestrian Ctr., 203 N.J. 184, 194 (2010)).

We begin by looking at the statute's "plain language," read "sensibly [and] in the context of the overall scheme in which the Legislature intended the provision to operate." Ibid. (citations omitted). "[A]n agency's legislative authority can be implied by the statute or by 'the entire legislative scheme of which it is a part.'" In re Adoption of N.J.A.C. 7:15-5.24(b), supra, 420 N.J. Super. at 564 (quoting In re Stormwater Mgmt. Rules, 384 N.J. Super. 451, 461 (App. Div.), certif. denied, 188 N.J. 489 (2006)). "A court will imply powers to enable the agency to effectuate the intent of the statute." Ibid.

"The primary purpose of CAFRA is to protect the unique and fragile coastal zones of the State." In re Egg Harbor Assocs. (Bayshore Centre), 94 N.J. 358, 364 (1983). "Although CAFRA is principally an environmental protection statute, the powers delegated to DEP extend well beyond protection of the natural environment. Succinctly stated, the delegated powers require DEP to regulate land use within the coastal zone for the general welfare." Ibid.

By enacting CAFRA, the Legislature intended to limit potential adverse environmental impacts while encouraging development of compatible land uses in the coastal zone. Seigel v. N.J. Dep't of Envtl. Prot., 395 N.J. Super. 604, 615 (App. Div.) (citing N.J.S.A. 13:19-2), certif. denied, 193 N.J. 277 (2007). Thus, "[e]ach agency decision involving an application for development under CAFRA invokes these 'competing policy considerations.'" Ibid. (quoting In re Cape May Cty. Mun. Utils. Auth., 242 N.J. Super. 509, 516 (App. Div. 1990)). CAFRA specifically was intended to "preserve[] the most ecologically sensitive and fragile area from inappropriate development and provide[] adequate environmental safeguards for the construction of any developments in the coastal area." N.J.S.A. 13:19-2 (emphasis added).

We have previously discussed at length CAFRA's permitting process and DEP's regulatory authority under the statute. See, e.g., Dragon v. N.J. Dep't of Envtl. Prot., 405 N.J. Super. 478, 494-97 (App. Div.), certif. denied, 199 N.J. 517 (2009). Succinctly stated, "CAFRA expressly requires that any development within the State's specified 'coastal area' either (1) be conducted under a permit issued pursuant to N.J.S.A. 13:19-5 or -5.1, or (2) be an activity that is explicitly exempted from the permitting requirement by N.J.S.A. 13:19-5.2 or -5.3." Id. at 494.

In Avalon, we rejected DEP's argument that CAFRA authorized the 2007 rule requiring public access to beaches at all times. Avalon, supra, 403 N.J. Super. at 601. We held that "even though CAFRA delegates authority to the DEP to regulate certain land uses within the coastal zone, it does not preempt municipal regulation under the [MLUL]." Ibid. (citing Bubis v. Kassin, 184 N.J. 612, 630 (2005); Lusardi, supra, 86 N.J. at 229). Therefore, DEP's regulatory powers under CAFRA extended to "land uses in the coastal zone, [but] the Legislature did not authorize [] DEP to preempt the basic municipal power to manage and control municipally-owned beaches, including deciding when those areas should be open to the public." Id. at 601.

As to the requirement of additional parking and bathroom facilities contained in the 2007 version of the Rules, we recognized that "CAFRA does not include any provision authorizing [] DEP to condition the issuance of [] a permit upon a municipality agreeing to provide additional parking spaces or restrooms in order to facilitate public access to the beach." Id. at 606. We rejected the agency's claim that because Raleigh Avenue recognized DEP's jurisdiction to monitor beach fees, the agency "ha[d] implied authority to impose whatever additional obligations [] DEP deem[ed] appropriate to facilitate public access to the beach." Id. at 607. We noted, DEP's authority to review beach fees "can be viewed as 'incidental' to the powers the Legislature expressly granted to [] DEP under CAFRA," but prescribing parking and bathroom facilities involved important policy questions within the "exclusive province of the Legislature." Id. at 607-08. "The Legislature could of course delegate authority for making these decisions to [] DEP. However, CAFRA does not contain such a delegation of authority." Id. at 608.

The only connection we discern between CAFRA's permitting process and the most recent iteration of the Rules is that applicants for CAFRA permits in municipalities that have adopted approved MPAPs may satisfy public access requirements "in

23                                                      A-1752-12T3

accordance with the [MPAP]."[6]  N.J.A.C. 7:7-16.9(c) and (k).  As already mentioned, in towns without approved MPAPs, an applicant must comply with other provisions of the Rules that place significant restrictions upon him or her.  N.J.A.C. 7:7-16.9(c)(2) and (n).  For example, pursuant to N.J.A.C. 7:7-16.9(u), public access areas must be clearly marked by signs approved by DEP, and, pursuant to N.J.A.C. 7:7-16.9(z), "areas set aside for public access to tidal waterways and their shores shall be permanently dedicated for public use through the recording of a Department approved conservation restriction."

Perhaps DEP could choose to adopt a different permitting process in municipalities that have adopted an MPAP.  The precise question is not before us, nor do we need to decide the issue.  We conclude that any nexus between CAFRA's general statutory purposes, its permitting processes and the Rules is limited at best, and it cannot justify the broad and pervasive regulatory regime imposed by the Rules taken as a whole.

Lastly, we note that CAFRA applies only to a well-defined "coastal area."  N.J.S.A. 13:19-4.  That "coastal area" is not

---

[6] The record included DEP's template for formulating an MPAP, as well as one MPAP submitted by a municipality.  Given the lack of specificity contained in these documents, it is unclear how a private landowner applying for an individual permit under CAFRA, for example, would necessarily satisfy his or her "public access requirements" by simply relying on the approved MPAP.

co-extensive with the "coastal zone," to which the Rules specifically apply. In short, CAFRA does not serve as explicit or implicit authority for DEP to promulgate the Rules.

(2)

For the sake of completeness, we address appellants' argument that the Rules conflict with provisions of the MLUL and other statutes that embody the Legislature's express delegation of powers to municipalities. Specifically, they argue DEP cannot require that a municipality wishing to adopt an MPAP incorporate same in its master plan, nor can DEP authorize the creation of municipal Public Access Funds.

The MLUL is "a comprehensive statute that allows municipalities to adopt ordinances to regulate land development 'in a manner which will promote the public health, safety, morals and general welfare' using uniform and efficient procedures." Rumson Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 349 (2003) (quoting Levin v. Twp. of Parsippany-Troy Hills, 82 N.J. 174, 179 (1980)). However, a municipality's power "must be exercised in strict conformity with the delegating enactment — the MLUL." Toll Bros. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 243 (2008).

Two goals of the MLUL are:

> To provide sufficient space in appropriate locations for a variety of

agricultural, residential, <u>recreational</u>, commercial and industrial uses and <u>open space, both public and private</u>, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens.

. . . .

<u>To promote the conservation of</u> historic sites and districts, <u>open space</u>, energy resources <u>and valuable natural resources</u> in the State and <u>to prevent urban sprawl and degradation of the environment</u> through improper use of land . . . [.]

[<u>N.J.S.A.</u> 40:55D-2(g) and (j) (emphasis added).]

<u>N.J.S.A.</u> 40:55D-28(b) requires that a master plan must include "[a] statement of objectives, principles, assumptions, policies and standards" and "[a] land use plan element . . . ." <u>N.J.S.A.</u> 40:55D-28(b)(1) and (b)(2). The statute then sets forth fourteen other discretionary elements.

The land use plan element requires consideration of "topography, soil conditions, water supply, drainage, flood plain areas, marshes, and woodlands[.]" <u>N.J.S.A.</u> 40:55D-28(b)(2)(a). Discretionary elements include a "recreation plan element," that includes "a comprehensive system of areas and public sites for recreation[,]" and a "conservation plan element" that provides "for the preservation, conservation, and utilization of natural resources, including . . . marshes,

wetlands, harbors, rivers and other waters . . . ." N.J.S.A. 40:55D-28(b)(7) and (8).

Given this extensive list of a master plan's permissible contents, we reject appellants' argument that, by permitting municipalities to adopt an MPAP and requiring them to incorporate it as part of their master plans, the Rules violate this portion of the MLUL. Adopting an MPAP seems consistent with these required and permitted portions of a master plan.[7]

However, we note that the MLUL provides that a master plan must be periodically re-examined, N.J.S.A. 40:55D-89, the reexamination report must include specific recommendations as to amendments to the master plan, N.J.S.A. 40:55D-89(d), and the failure to adopt a re-examination report "constitute[s] a rebuttable presumption that the municipal development regulations are no longer reasonable." N.J.S.A. 40:55D-89.1. We express substantial doubt that those provisions of the Rules requiring the regular update of MPAPs and prohibiting amendment without DEP approval can be harmonized with these provisions of the MLUL.

---

[7] We note that the Legislature anticipated that a master plan could designate private property for anticipated public use, and the Planning Board could reserve those locations for one year, subject to just compensation to an affected developer. See N.J.S.A. 40:55D-44.

We do agree with appellants that the creation of municipal Public Access Funds by which participating municipalities may, pursuant to the Rules, receive monetary contributions from permit applicants is, absent a specific legislative grant of authority, ultra vires. In New Jersey Shore Builders Ass'n v. Township of Jackson, 199 N.J. 449 (2009), the Court concluded that the municipal appellants lacked the authority to promulgate ordinances that required developers to set aside open space or make payments in lieu thereof. Id. at 452. The Court recognized that the "statutory authority that permits a municipality to require contributions for off-tract improvements is limited." Id. at 453 (citing N.J.S.A. 40:55D-42 ("referring to contributions for off-tract improvements to water, sewer, drainage, and street improvements only")).

DEP cites no statutory authority by which municipalities may accept monetary contributions from permit applicants simply by adopting an MPAP, and no such authority is provided by the MLUL or any other statute that we located. Those provisions of the Rules that empower a municipality to create a Public Access Fund lack any statutory authority and are ultra vires.

### III.

In sum, we conclude that absent a specific legislative grant of authority, DEP was not authorized by the public trust

28

doctrine to promulgate the Rules. We further conclude that CAFRA's permitting provisions might implicitly authorize limited portions of the Rules, but it is not our task to identify which limited portions of the Rules could be so authorized. Given their 1) application beyond CAFRA's territorial limits, and 2) their extensive scope, the Rules exceed any implied grant of legislative authority under the statute. Lastly, we conclude that the creation of a municipal Public Access Fund would be an ultra vires exercise of municipal power, and, while the MLUL could authorize adoption of a MPAP as part of a municipal master plan, the provisions of the MLUL that govern amendment of the master plan leave no room for DEP's pervasive involvement in the process as set forth in the Rules.

We therefore conclude that the Rules must be stricken, and we invalidate N.J.A.C. 7:7-9.48, the public trust rights rule, and N.J.A.C. 7:7-16.9, the public access rule, as well as any other provisions of the regulations that rely upon those two sections.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION