**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0804-23

KEVIN MORAN, C/O SEA POINT
CONDOMINIUM ASSOCIATION,
INC.,

      Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION, LAND USE
REGULATION,

      Respondent-Respondent.

_____

Argued March 18, 2025 – Decided August 20, 2025

Before Judges Smith and Vanek.

On appeal from the New Jersey Department of Environmental Protection.

Neil Yoskin argued the cause for appellant (Cullen and Dykman, LLP, attorneys; Neil Yoskin, of counsel and on the briefs; Zachary A. Klein, on the briefs).

Sara Torres, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney

General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Kathrine M. Hunt, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Sea Point Condominium Association, Inc. (Sea Point) appeals from the final agency decision of the New Jersey Department of Environmental Protection (DEP) imposing a public access condition on its Waterfront Development Permit pursuant to the Public Access Law, N.J.S.A. 13:1D-150 to -156. Having considered the record, the legal arguments of the parties, and controlling law, we affirm for the reasons which follow.

I.

A.

A brief overview of New Jersey's Public Access Law and the public trust doctrine is warranted. The public trust doctrine refers to the common-law principle that a state holds "in trust for the people" ownership, dominion and sovereignty over tidally flowed lands extending to the mean high-water mark. Susko v. Borough of Belmar, 458 N.J. Super. 583, 590 (App. Div. 2019). This ancient doctrine, with roots tracing back through English law to Roman law, has been consistently recognized and applied by our courts. Hackensack Riverkeeper, Inc. v. N.J. Dep't of Env't Prot., 443 N.J. Super. 293, 303 (App. Div. 2015).

A-0804-23

In 2019, the Legislature enacted the Public Access Law, N.J.S.A. 13:1D-150 to -156.  It stated that the public trust doctrine "is not fixed or static" but instead is "molded and extended to meet changing conditions and the needs of the public it was created to benefit."  N.J.S.A. 13:1D-150(c).  In the Public Access Law, the Legislature tasked DEP with the "authority and the duty to protect the public's right of access to tidally flowed waters and their adjacent shorelines," requiring the department to "make all tidal waters and their adjacent shorelines available to the public to the greatest extent practicable."  N.J.S.A. 13:1D-150(e).

B.

Against this backdrop, we review the matter before us.  Sea Point, a homeowner's association, operates a twenty-four-unit condominium development surrounding a boat basin on the north branch of Beaver Dam Creek in Point Pleasant Borough.  The waterfront property features three two-story residential buildings, a swimming pool, walkways, driveways, parking lots, landscaping, two paved cul-de-sacs with parking spaces, and a boat basin with slips, finger piers, and mooring piles used exclusively by condominium residents.  Sea Point does not permit public access to its waterfront, although the public can reach the water through access points nearby.

A-0804-23

In July 2020, Sea Point applied for a waterfront development permit to reconstruct deteriorated bulkhead. Sea Point proposed to replace 750 feet of bulkhead twenty-four inches waterward of the existing structure, reconstruct another 126 feet of bulkhead in the same footprint, and obtain after-the-fact authorization for replacing finger piers and mooring piles within the boat basin.

During the permit review process, DEP requested Sea Point to submit a public access proposal pursuant to the Public Access Law. Rather than proposing the construction of new public access facilities on its own property, Sea Point attempted to satisfy this requirement by offering to contribute money to a nearby public access improvement project. DEP rejected this offer. After negotiations failed, DEP issued the requested waterfront development permit on December 14, 2020, including in its pre-construction condition that Sea Point submit a proposal for providing public access on the project site. DEP further specified that Sea Point must construct any approved public access project either before or at the same time as the authorized waterfront development.

Sea Point challenged the mandated condition by seeking a hearing before the Office of Administrative Law. Both DEP and Sea Point filed cross motions for summary decision. On October 5, 2022, the ALJ granted summary decision in favor of DEP, finding that the Public Access Law clearly required public

A-0804-23

access conditions under these circumstances and that no genuine issue of material fact existed. On October 6, 2023, DEP Commissioner issued a final agency decision, adopting the ALJ's initial decision with modifications. On appeal, Sea Point argues, among other things: the Public Access Law still requires the DEP to apply the four factor Matthews[1] test to determine whether to impose a public access requirement on Sea Point; the DEP cannot impose public access conditions on Sea Point until it adopts implementing regulations; the DEP committed error by rejecting Sea Point's offer of a financial payment in lieu of public access; and the DEP's public access requirements amount to a constitutional taking.

## II.

Our review of a final decision of an administrative agency is limited. An agency decision "will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Mount v. Bd. of Tr., PFRS, 233 N.J. 402, 418 (2018) (quoting Russo v. Bd. of Tr., PFRS, 206 N.J. 14, 27 (2011)). However, we are not "'bound by an agency's interpretation of a statute or its determination of a strictly legal issue,' particularly when 'that interpretation is inaccurate or contrary to legislative

---

[1] Matthews v. Bay Head Improvement Ass'n, 95 N.J. 306 (1984).

objectives.'" Id. at 418-19 (quoting Russo, 206 N.J. at 27). "Like all matters of law, we apply de novo review to an agency's interpretation of a statute or case law." Russo, 206 N.J. at 27.

"A party may move for summary decision upon all or any of the substantive issues in a contested case." N.J.A.C. 1:1-12.5(a). The standard for summary decision motions pursuant to N.J.A.C. 1:1-12.5 is "substantially the same as that governing a motion under Rule 4:46-2 for summary judgment in civil litigation." L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 203 (2015) (internal quotation marks omitted). The motion may be granted if the record "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law." N.J.A.C. 1:1-12.5(b); see also R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995). "Because an agency's determination on summary decision is a legal determination, our review is de novo." L.A., 221 N.J. at 204.

A reviewing court is "in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (alteration in original) (internal quotation marks omitted). Nonetheless, "[w]e will overturn an agency's interpretation of a statute it implements only when it is 'plainly

6

unreasonable.'" In re Comm'r's Failure to Adopt 861 CPT Codes, 358 N.J. Super. 135, 149 (App. Div. 2003) (quoting Merin v. Maglaki, 126 N.J. 430, 437 (1992)). We thus afford "substantial deference to the interpretation of the agency charged with enforcing an act." Ibid.

## III.

We affirm substantially for the reasons expressed in the Commissioner's comprehensive final agency decision. For completeness, we add the following comments addressing Sea Point's various contentions.

## A.

Sea Point's primary argument centers on the relationship between the Public Access Law, N.J.S.A. 13:1D-150 to -156 and the established public trust doctrine. They contend that the Public Access Law codified and thereby incorporated the existing public trust doctrine. As a result, Sea Point argues DEP must apply the four-factor test from Matthews[2] before requiring public access on private property.

---

[2] Under Matthews, the four-part test specifically looks at: (1) the location of the dry sand area in relation to the foreshore; (2) extent and availability of publicly-owned upland sand area; (3) nature and extent of public demand; and (4) usage of the upland sand land by the owner are all factors to be weighed and considered in fixing the contours of the usage of the upper sand. 95 N.J. at 326.

A-0804-23

We consider this statutory construction argument using a de novo standard of review.  In re Proposed Constr. of Compressor Station (CS327), 258 N.J. 312, 324 (2024) (quoting Russo, 206 N.J. at 27).  When interpreting statutes, courts "aim to effectuate the Legislature's intent."  Ibid. (quoting W.S. v. Hildreth, 252 N.J. 506, 518 (2023)).  "If the statutory text has a clear meaning, that meaning controls, but if the plain language is ambiguous or leads 'to an absurd result or to a result at odds with the objective of the overall legislative scheme,' then [the Court] will analyze extrinsic sources such as legislative history to best determine legislative intent."  N.J. Realtors v. Twp. of Berkely, 479 N.J. Super. 379, 392 (App. Div. 2024) (quoting N.J. Div. of Child. Prot. v. B.P., 257 N.J. 361, 374 (2024)).

N.J.S.A. 13:1D-153(a) establishes comprehensive criteria for determining when public access is required:

> For any application for a permit . . . if the application provides for a change in the existing footprint of a structure, a change in use of the property, or involves beach replenishment or beach and dune maintenance, the department shall review the existing public access provided to tidal waters and adjacent shorelines at the property and shall require as a condition of the permit or other approval that additional public access to the tidal waters and adjacent shorelines consistent with the public trust doctrine be provided.

The language is unambiguous. The statute imposes a mandatory duty on the DEP to review existing public access and require additional access consistent with the public trust doctrine when certain application relief is sought. It further states that "in determining the public access that is required at a property, the department shall consider the scale of the changes to the footprint or use, the demand for public access, and any department-approved municipal public access plan." N.J.S.A. 13:1D-153(a).

Had the Legislature intended the Matthews test to govern these determinations, it would have said so explicitly. The legislature's choice to create specific criteria for public access determinations, coupled with its silence regarding Matthews, demonstrates its clear legislative intent that Matthews does not control public access determinations under the Public Access Law.

We are not persuaded that the phrase "consistent with the public trust doctrine" expressly incorporates the Matthews four-part test, as petitioner suggests. We conclude that the legislature meant to ensure that DEP aligns any public access it may require of a permit applicant with the public's well-settled right to access the tidal waters and adjacent shorelines of our state.

B.

Sea Point next argues that existing Coastal Zone Management (CZM) rules exempt its development from public access requirements. We find this argument unavailing, as it fails to recognize fundamental principles governing the relationship between statutes and regulations.

As our Supreme Court has made clear, "statutes, when they deal with a specific issue or matter, are the controlling authority." Parsons ex rel. Parsons v. Mullica Twp. Bd. of Educ., 226 N.J. 297, 314 (2016). "Any regulation or rule which contravenes a statute is of no force, and the statute will control." Ibid. The Public Access Law, enacted in 2019 after the CZM rules, takes precedence over any conflicting regulatory provisions that predated it.

The record shows that Sea Point's proposed development constitutes "a change in the existing footprint of a structure" under the plain language of N.J.S.A. 13:1D-153(a). The bulkhead reconstruction extending twenty-four inches waterward will physically expand the structure into the water, changing its footprint. Under DEP's own regulatory definition at N.J.A.C. 7:7-1.5, "footprint of development" means "the vertical projection of the horizontal plane of the exterior of all exterior walls of a structure." Piers and pilings are expressly included within the definition of "structure." The previously unauthorized additional catwalks and mooring piles installed by petitioner also constitute

structural changes requiring post hoc regulatory review for the first time. These modifications clearly constitute changes to the property's structural footprint under the Public Access Law, triggering the application of N.J.S.A. 13:1D-153(a).

C.

Sea Point also contends the Public Access Law cannot be applied because DEP failed to adopt implementing regulations within the eighteen months required by N.J.S.A. 13:1D-153(b). While we note DEP's shortfall in complying with this legislative directive, we conclude that the deficiency does not defeat DEP's legislatively granted authority to implement the statute as written.

N.J.S.A. 13:1D-153(a) and (b) operate independently. Section (a) establishes the DEP's mandatory duty to assess additional public access when specified conditions are met—namely, when permit applications provide for changes in existing footprint, changes in use, or involve beach work. Section (b) followed by subsections (1), (2), and (3) requires DEP to adopt rules for specific, discrete categories: permits-by-rule requiring public access but not individual review, permits for which public access would not be required, and emergency projects exempt from individual review.

11

Our jurisprudence recognizes that statutory provisions may be self-executing and enforceable without implementing regulations where the statutory language provides sufficient guidance for implementation. Hackensack City v. Bergen Cnty., 405 N.J. Super. 235, 247 (App. Div. 2009). Section (a) provides clear triggers and criteria, and it establishes when public access review is required and what factors DEP must consider in determining appropriate public access requirements.

DEP's failure to adopt the regulations mandated by Section (b) does not invalidate the self-executing language of Section (a) or prevent DEP from applying its provisions to Sea Point's permit application. The Legislature's inclusion of self-executing language in subsection (a) and future rulemaking language in Section (b) leads us to conclude that it intended to proceed with public access regulation while more detailed guidance is developed.

D.

Sea Point argues it should be permitted to make a monetary contribution for off-site public access rather than provide on-site access. The plain language of N.J.S.A. 13:1D-153(a) requires that "additional public access to the tidal waters and adjacent shorelines . . . be provided" and contains no provision for monetary contributions in lieu of actual access.

12

The plain meaning interpretation of the statute is reinforced by established precedent. In <u>Hackensack Riverkeeper</u>, 443 N.J. Super. at 313-14, we held that absent specific legislative authorization, receiving monetary contributions from permit applicants constitutes ultra vires agency action. The Public Access Law contains no such authorization for monetary alternatives to the on-site access provision. Thus, Sea Point's proposed monetary contribution cannot substitute for the on-site public access mandated by law.

E.

Sea Point's penultimate contention is that the ALJ erred by granting summary decision and not holding a plenary hearing or oral argument. A summary decision is appropriate in an administrative proceeding when there are no genuine issues of material fact, and the moving party is entitled to prevail as a matter of law. N.J.A.C. 1:1-12.5(b); <u>Brill</u>,142 N.J. at 540. The record reflects that the parties stipulated to the facts, and the dispute centered on the legal interpretation of the Public Access Law, not factual questions.

Administrative hearings are discretionary. They are not required where the facts are undisputed, and the issue is purely legal. The Commissioner correctly determined that summary decision was proper, and no additional hearing was necessary. We discern no error.

A-0804-23

F.

Finally, Sea Point raises a constitutional taking claim. To the extent petitioner presents a facial constitutional challenge to the access requirement, we observe that neither the Office of Administrative Law nor the DEP possesses jurisdiction to adjudicate such claims. It is well settled that administrative agencies generally lack authority to decide questions concerning the facial validity of statutes or regulations under the State or Federal Constitutions. See, e.g., D.L. v. Bd. of Educ. of Bridgewater-Raritan Reg'l Sch. Dist., 176 N.J. 568, 583 (2003) (noting "agency fact-finding and technical expertise do not extend to constitutional adjudication"); Beck v. Beck, 86 N.J. 480, 488 (1981).

A takings claim focused on a particular regulation is not ripe until the government entity reaches a final decision regarding the specific application of the regulation to the property in question. Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank, 473 U.S. 172 (1985); Heyert v. Taddese, 431 N.J. Super. 388, 441 (App. Div. 2013).

Here, DEP has not issued a final decision on the extent of public access required at Sea Point's property. The pre-construction condition requires submission and approval of a public access plan, but the scope, nature, and specific requirements of that access remain undetermined. Until DEP makes a

14

final decision on the specific public access requirements—including their extent, location, and operational parameters—any takings challenge remains premature and unripe for judicial review.

In sum, we hold that: (1) N.J.S.A. 13:1D-150 to -156 creates statutory criteria for public access determinations that do not require application of the Matthews test; (2) the statute's provisions are self-executing despite DEP's delay in adoption of implementing regulations; (3) Sea Point's proposed development triggers the law's public access requirements as a change in structural footprint; (4) there is no statutory authority for the use of monetary contributions as a permissible substitute for on-site access provision; and (5) Sea Point's takings claim is premature pending DEP's final determination of specific access requirements.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0804-23