# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0151-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GARY WILSON,

     Defendant-Appellant.

_____

> Submitted December 2, 2019 – Decided February 3, 2020
>
> Before Judges Ostrer and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 09-08-0572.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Karen Ann Lodeserto, Designated Counsel, on the brief).
>
> Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Natacha Despinos Peavey, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Gary Wilson appeals from the trial court's order denying, without an evidentiary hearing, his application for post-conviction relief (PCR). Wilson collaterally challenges his conviction, after a guilty plea, of felony murder arising out of the aggravated sexual assault and then homicide of C.S. while she was extremely intoxicated. We affirm, because Wilson's claims of ineffective assistance of counsel are based on no more than bald assertions that his attorney failed to adequately prepare a defense and communicate with him about his potential diminished capacity defense, and permitted him to plead while he was mentally impaired.

In his plea colloquy, Wilson stated that he and Rocky DiTaranto spent Memorial Day 2009 at the home of David Granski, Jr., drinking and abusing drugs to the point of intoxication. Also present at the home were Granski's father, David Granski, Sr. (Granski Sr.), and his father's girlfriend, C.S., who was "extremely intoxicated." At some point in the evening, Wilson admitted he was "making out" with C.S., but stopped when Granski Sr. entered the house. Sometime later, C.S. entered the backyard alone. DiTaranto "guid[ed] [her] to the back of the backyard," and then sexually assaulted her on the ground. He held C.S. down by her neck as he lay on top of her. Wilson testified that he also intended "to have sex" with C.S. after DiTaranto finished. Wilson removed his

2

shorts, leaving him in his swim trunks, but he was unable to achieve an erection. After that, he got a cinder block and dropped it twice on C.S.'s head "[t]o keep her quiet for what [DiTaranto] did." The blows killed her.

Before Wilson entered his plea, the parties had been involved in an extended <u>Miranda</u> hearing on the admission of Wilson's confession.[1] Wilson said he understood that by pleading, he waived his motion to suppress his statements. During the plea hearing, Wilson disclosed that he was taking four prescription medicines – Depakote, Abilify, Lexapro, and Seroquel – "[b]ecause [he] had mental illness in the past, and present, with suicidal thoughts." He confirmed he could understand what was happening in the court while taking those medicines. He thereafter demonstrated that he was aware of the month and place, the role of the judge, and his reason for being present in court. <u>See</u> N.J.S.A. 2C:4-4(b).

In response to defense counsel's inquiry, Wilson also confirmed that he and counsel "spent a lot of time going over the facts of the case," including

---

[1] Apparently relying on his pre-sentence report, which is not before us, Wilson stated in his PCR court brief that he told police that he twice strangled C.S. before bludgeoning her to the death with the cinder block. The State has included in the record on appeal the full text of recorded interviews with Wilson, DiTaranto, and Granski, Jr. However, they are unaccompanied by a certification, <u>see</u> <u>Rule</u> 1:6-6, or any evidence that they were presented to the trial court. Therefore, we are not obliged to consider them.

witness statements and the police reports. But, defense counsel did not mention a potential diminished capacity defense, or defense and prosecution reports addressing the subject. Nor did the court address the waiver of a diminished capacity defense when questioning Wilson.

The record includes an undated report of defense expert Joel E. Morgan, Ph.D., who opined, after interviewing Wilson and reviewing various records of Wilson's prior mental health treatment and substance abuse, that Wilson was "in a decompensated state at the time of the events in question; [and] he clearly was experiencing diminished mental capacity at the time of the alleged criminal offense."[2] Dr. Morgan stated that when Wilson was intoxicated and non-compliant with his prescribed medication, as he was when he committed the homicide, his self-control was "extremely limited," and he experienced "serious decompensation and engage[d] in violent behavior, likely representing the

---

[2] The version of the report in the record on appeal begins on page 2. Counsel states, "Dr. Morgan's evaluation was filed without a cover page and begins on page 2. That is how it was filed in the PCR appendix." Even if that is how the report was presented to the PCR court, we are unpersuaded that Dr. Morgan omitted page one of his report in his original submission to plea counsel. Typically, the first page of a forensic examination addresses the scope of the expert's undertaking, and the understanding reached with the examinee regarding the use of the examination.

manic phase of Bipolar disorder" and his "ability to govern his thoughts and behavior bec[a]me[] significantly diminished."

The court accepted Wilson's plea to felony murder, and ultimately sentenced him, in accord with the plea agreement, to a forty-five-year prison term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Also, as part of the plea agreement, the court dismissed multiple first-degree murder counts, including some that carried the risk of life imprisonment without parole. See N.J.S.A. 2C:11-3(b)(4)(f) and -3(b)(4)(g). The court also dismissed counts charging first-degree aggravated sexual assault. See N.J.S.A. 2C:14-2(a).

Wilson did not file a direct appeal from his conviction or sentence. In his timely pro se PCR petition, Wilson contended that his attorney provided ineffective assistance of counsel. He stated only, "My lawyer let me sign a plea bargain of 1st degree Felony Murder when the Felony I signed for was not a felony at all But an aggravating [sic] factor." Once counseled, he submitted a supplemental certification that alleged additional instances of ineffective assistance of counsel and challenged the adequacy of the plea.

With regard to ineffective assistance, he asserted that trial counsel (1) "fail[ed] to adequately prepare the case for trial," including failing to "consult[] an expert regarding [his] long-term use of prescription, psychotropic

medications, CDS addiction, and alcoholism to determine whether [he] could assert a defense" and "neglect[ing] to raise his mental health and substance abuse as defenses"; (2) "fail[ed] to adequately . . . communicate with [him] about how evidence of diminished capacity caused by [his] long-term use of prescribed, psychotropic medications, CDS, and alcoholism could affect the outcome of a trial"; (3) "persuad[ed] [him] to plead guilty to felony murder" while he was hospitalized and receiving psychotropic medications, "even though there was no evidence to support [his] participation in the required underlying felony"; and (4) permitted him to enter a plea that lacked an adequate factual basis.

Regarding the plea itself, he alleged it was not knowing and voluntary. Specifically, he cataloged numerous side effects associated with Depakote, Lexapro, Seroquel, and Abilify, and then asserted he "was experiencing all the negative symptoms" when he pleaded guilty, and "was not thinking clearly when . . . [he] pled guilty to felony murder." He also contended that he failed to provide a sufficient factual basis for his plea, stating that he "did not allocate [sic] to an underlying felony." He asked the court to "vacate [his] conviction based on [his] guilty plea."

However, in his counseled brief, Wilson narrowed the grounds for relief to two points. First, he argued that trial counsel was ineffective because he

A-0151-18T4

failed to consult a psychiatrist or pharmacologist to evaluate Wilson's medication and drug use, to support a diminished capacity or intoxication defense, and "comment on the applicability of [Wilson's] long-term use of psychotropics, chronic substance abuse, and alcoholism as defenses available to him." Second, he argued that Wilson's allocution failed to present a factual basis for felony murder. He contended that there was insufficient proof of the predicate crime of sexual assault, notwithstanding that Wilson said he saw DiTaranto holding the victim down by her neck.

The PCR court rejected both arguments in a written opinion.

With respect to the ineffective-assistance-of-counsel argument, the court applied the familiar two-prong test under Strickland v. Washington, 466 U.S. 668, 687, 694 (1984), requiring a petitioner to show that (1) counsel performed deficiently and "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment"; and (2) petitioner was prejudiced, such that there existed "a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different." The court found that Wilson failed to satisfy the first prong, stating, "The Defendant has failed to explain why trial counsel's failure to consult a pharmacologist or psychiatrist amounts to ineffective assistance of counsel when trial counsel did

7

in fact obtain a detailed psychological report form Dr. Morgan that incorporated Defendant's use of psychotropic medications, illicit substances, and alcohol."

The PCR court proceeded to address Wilson's unargued assertions of ineffective assistance. The court concluded they were bald assertions:

> The Defendant's claims that his trial counsel coerced him into entering a guilty plea and that his trial counsel did not inform him of the possibility of pursuing an insanity defense and/or a diminished capacity defense is not supported by any objective evidence in the record aside from Defendant's bald assertion of same in his certification. This Court finds that Defendant's counsel at the trial level did not fall below an objective standard of reasonableness.

The court also concluded that Wilson failed to establish he was prejudiced by his trial counsel's performance.

The court also rejected Wilson's inadequate-factual-basis argument. Although the court concluded that the argument was barred by Rule 3:22-4, the court considered the argument under Rule 3:21-1, which permits a defendant to file a motion to withdraw a guilty plea at any time after sentencing "to correct a manifest injustice." The court held that Wilson established a factual basis for the predicate offense of sexual assault by presenting facts that established he attempted to commit aggravated sexual assault. Those facts include: C.S. was extremely intoxicated; DiTaranto held her down by her neck; she therefore was

physically helpless or incapacitated; and Wilson pulled down his pants in anticipation of assaulting C.S., and failed to complete the crime only because he could not achieve an erection. Wilson's actions constituted "a substantial step in a course of conduct planned to culminate in his commission of [the crime]" of aggravated sexual assault. See N.J.S.A. 2C:5-1. The court did not address Wilson's unargued assertion that his plea was not knowing or voluntary because he was under the influence of psychotropic medicine.

On appeal, Wilson refocuses his claims. He argues that a hearing is necessary to explore his allegations that his attorney (1) ineffectively counseled him about his diminished capacity defense, and (2) ineffectively allowed him to plead guilty while impaired. He contends:

> THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING BECAUSE TESTIMONY IS NEEDED REGARDING THE SUBSTANCE OF THE LEGAL ADVICE PLEA COUNSEL PROVIDED TO DEFENDANT REGARDING A DIMINISHED CAPACITY/ INTOXICATION DEFENSE AND HOW IT IMPACTED HIS DECISION TO PLEAD GUILTY, RATHER THAN PROCEED TO TRIAL, AND WHY HE ALLOWED HIS IMPAIRED CLIENT TO PLEAD GUILTY.

We may review de novo the PCR court's factual findings made without an evidentiary hearing. State v. Harris, 181 N.J. 391, 421 (2004). We also owe no

9

deference to the trial court's conclusions of law.  Ibid.  Applying this standard of review, we affirm the trial court's order denying relief.

As did the PCR court, we apply the Strickland two-part test.  In particular, we apply the prejudice definition applicable to a guilty plea case.  A petitioner must show "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial," Hill v. Lockhart, 474 U.S. 52, 59 (1985), and doing so "would have been rational under the circumstances," Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

"[W]e consider [a] petitioner's contentions indulgently and view the facts asserted . . . in the light most favorable to him [or her]."  State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).  However, we require a petitioner to state "with specificity the facts upon which the claim for relief is based."  R. 3:22-8.  "A petitioner must do more than make bald assertions that he was denied the effective assistance of counsel.  He must allege facts sufficient to demonstrate counsel's alleged substandard performance."  Cummings, 321 N.J. Super. at 170.  If a petitioner claims his attorney failed to investigate, or call an absent witness, the petitioner must present, through an affidavit or certification,

what that investigation would have produced, or what that witness would have said. Ibid.

Like the PCR court, we reject Wilson's ineffective-assistance-of-counsel claims because they rest solely on "bald assertions." We acknowledge that what qualifies as a "bald assertion" may not always be easy to discern. Sometimes, as a practical matter, a petitioner can resort only to his or her say-so that an attorney was ineffective. There may be no corroborating proof that an attorney misinformed a client, or failed to address a key aspect of the case that negatively affected the trial strategy. However, where there is obvious circumstantial evidence tending to belie a petitioner's assertion, it is incumbent upon the petitioner to address it.

For example, in Cummings, the petitioner alleged that his attorney misinformed him that he would be discredited with his prior juvenile adjudications if he testified; and if he were not so misinformed, he would have testified, and presented an alibi that he was at the Newark apartment of a Kyle Brown when the alleged crime took place in East Orange. 321 N.J. Super. at 163. However, we deemed this claim insufficient to support a prima facie case, because the petitioner presented no corroborating affidavit from Brown. Id. at 170-71.

Wilson's assertion that his plea counsel failed to confer with him about his diminished capacity defense also fails for lack of any corroboration or explanation. Since Wilson submitted to Dr. Morgan's examination, one may presume that Wilson was aware that his attorney was pursuing a diminished capacity defense; and later, by pleading, he waived that defense. Yet, Wilson's certification in support of PCR says nothing about what counsel told him in advance of the examination, what Dr. Morgan told him, and any discussions he had afterwards.[3] Although it would have been better practice for trial counsel and the court to specifically address defendant's waiver of his diminished capacity defense during his plea colloquy, see State v. O'Donnell, 435 N.J. Super. 351 (App. Div. 2014), we are not convinced, under the circumstances of this case, that the omission establishes a prima facie case that counsel did not inform Wilson of the waiver. Petitioner bears the burden to establish the prima facie case. State v. Gaitan, 209 N.J. 339, 350 (2012).

Likewise, Wilson failed to present any support, other than his say-so, for his assertion that counsel ineffectively allowed him to plead guilty while he was impaired. In support of his claim that he was not thinking clearly because of his

---

[3] In that regard, the omission of the first page of Dr. Morgan's report looms large, as it may have described Dr. Morgan's discussion with Wilson regarding the purpose of the examination.

psychotropic medications, he alleges implausibly that he was experiencing every side-effect associated with his four medications that he identified. Including among them are apparently incompatible symptoms such as shivering and sweating, stiffness and jerking, vomiting and diarrhea, and depression and excited feelings.

His claim is also belied by his own statements during the plea hearing that he was able to understand the proceedings while medicated. A defendant's representation that his guilty plea was voluntary constitutes "'a formidable barrier'" to the claim it was not, because we presume declarations in open court are truthful. See State v. Simon, 161 N.J. 416, 444 (1999) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).[4]

Wilson provides no expert opinion that his prescribed medications, in his case, impaired his ability to knowingly and voluntarily enter his plea, let alone that such impairment would have been apparent to counsel. Rather, Dr. Morgan observed, in his examination report, that when Wilson was compliant with the four medications, he was alert, cooperative, and his speech was productive and

---

[4] We acknowledge that, contrary to preferred practice, the judge who accepted Wilson's plea did not expressly find that Wilson appeared to be lucid and thinking clearly. But, the court did find that he entered his plea "knowingly and voluntarily."

A-0151-18T4

spontaneous. In sum, Wilson has failed to present a prima facie case that his attorney was deficient by allowing him to plead guilty while impaired, because he has failed to present a prima facie case that he was impaired.

Inasmuch as Wilson has failed to meet the first Strickland prong, we need not address that he suffered prejudice. However, we note that Wilson did not clearly assert in his certification that he would have insisted upon going to trial but for the allegedly deficient performance of counsel, nor does he explain why that would have been rational. To establish the second point, Wilson was obliged to address the strength of his defense, and the weight of the evidence against him, which presented the risk of a life sentence without parole. He did not do so.

Wilson also argues that he should be entitled to withdraw his plea because he did not enter it voluntarily, knowingly, and intelligently, as Rule 3:9-2 requires. He refers to the four-factor test for plea withdrawal under State v. Slater, 198 N.J. 145, 157-58 (2009): "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of the defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused."

We are not obliged to reach this argument, since it lacks a separate point heading, as Rule 2:6-2(a)(5) requires. See Hackensack Riverkeeper, Inc. v. N.J. Dep't of Envt'l Prot., 443 N.J. Super. 293, 308 n.5 (App. Div. 2015); Mid-Atlantic Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div. 2011). Furthermore, Wilson did not formally move to withdraw his plea pursuant to Rule 3:21-1 before the trial court. See O'Donnell, 435 N.J. Super. at 368-73 (distinguishing between a petition for PCR and a motion to withdraw a plea). Generally, we need not address arguments not presented to the trial court. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).[5]

However, a failure to comport with Rule 3:9-2 may be raised in a petition for PCR, as well as a motion to withdraw a plea or a direct appeal. See State v. Urbina, 221 N.J. 509, 527-28 (2015) (addressing failure to comply with Rule 3:9-2, in that case, the requirement to secure an adequate factual basis for the plea). We therefore reach Wilson's argument that his plea was not knowing and voluntary, and we reject it. As we stated above, he presented only bald

---

[5] Although the PCR court relied on Rule 3:21-1 as a basis to consider Wilson's inadequate-factual-basis argument, Wilson did not request, nor did the court address, withdrawal of his plea on the ground it was not voluntary or knowing.

A-0151-18T4

assertions that he was impaired when he entered his plea, and that he was unaware of Dr. Morgan's opinion regarding diminished capacity.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0151-18T4