NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-1418-17T4;
A-1419-17T4; A-1420-17T4;
A-1421-17T4; A-1422-17T4;
A-1423-17T4; A-1424-17T4;
A-1425-17T4; A-1426-17T4;
A-1427-17T4; A-1428-17T4;
A-1429-17T4; A-1430-17T4;
A-1432-17T4; A-1433-17T4;
A-1434-17T4; A-1435-17T4;
A-1436-17T4; A-1437-17T4;
A-1438-17T4; A-1440-17T4;
A-1444-17T4; A-1445-17T4;
A-1446-17T4; A-1447-17T4;
A-1448-17T4; A-1449-17T4;
A-1450-17T4; A-1451-17T4;
A-1452-17T4; A-1453-17T4;
A-1454-17T4; A-1455-17T4;
A-1456-17T4; A-1457-17T4;
A-1458-17T4; A-1459-17T4;
A-1460-17T4; A-1461-17T4;
A-1462-17T4; A-1463-17T4;
A-1468-17T4; A-1472-17T4;
A-1473-17T4; A-1474-17T4;
A-1475-17T4; A-1476-17T4;
A-1477-17T4; A-1478-17T4;
A-1495-17T4; A-1516-17T4;
A-1538-17T4; A-1539-17T4;
A-1558-17T4; A-1619-17T4;
A-1626-17T4; A-1648-17T4;
A-1656-17T4; A-1657-17T4;
A-1659-17T4; A-1660-17T4;
A-2080-17T4

| APPROVED FOR PUBLICATION |
| :---: |
| April 16, 2020 |
| APPELLATE DIVISION |

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

1 HOWE STREET BAY HEAD, LLC,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

623 EAST AVENUE, LLC,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

MICHAEL CORTESE, and SAUNDRA CORTESE,

      Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

PAOLO COSTA and WENDY COSTA,

      Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

DAVID J. FARRIS and JILL E. FARRIS,

      Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

ALEXANDER MCGINNIS FRAZIER, TRUSTEE OF THE ALEXANDER FRAZIER 2011 IRREVOCABLE TRUST; ANN SCHUYLER FRAZIER, TRUSTEE OF THE SCHUYLER FRAZIER 2011 IRREVOCABLE TRUST,

3

Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

FRANK J. HANUS III,

    Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

JAMES F. HIGGINS and JACQUELYN M. HIGGINS,

    Defendants-Appellants,

and

INTERNAL REVENUE SERVICE,

    Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

LAUGHING MERMAID
PRODUCTIONS, LLC,

Defendant-Appellant,

and

WELLS FARGO BANK, NA,

Defendant.
_____

STATE OF NEW JERSEY, BY THE
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

Plaintiff-Respondent,

v.

OWEN T. LYNCH and DIANE G.
LYNCH,

Defendants-Appellants,

and

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

Defendant.
_____

STATE OF NEW JERSEY, BY THE
DEPARTMENT OF ENVIRONMENTAL

PROTECTION,

    Plaintiff-Respondent,

v.

DEBRA JONES McCURRY, GWENETH
JONES COTE, and THOMAS JONES, III,

    Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

    Plaintiff-Respondent,

v.

ANN F. MESTRES,

    Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

    Plaintiff-Respondent,

v.

LOWELL MILLAR and JENNIFER
MILLAR,

    Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

ROBERT A.M. RENZULLI, FRANCESCA M. RENZULLI, LIBERO M. RENZULLI, and GUILANA M. RENZULLI,

Defendants-Appellants,

and

MANASQUAN SAVINGS BANK,

Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

RDCC, LLC,

Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

MARTIN N. ROSEN, AS TRUSTEE OF
THE MARTIN N. ROSEN QUALIFIED
PERSONAL RESIDENCE INTEREST
TRUST; and BARBARA ROSEN, AS
TRUSTEE OF THE BARBARA ROSEN
QUALIFIED PERSONAL INTEREST
TRUST,

     Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

     Plaintiff-Respondent,

v.

JEFFREY H. SANDS,

     Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

     Plaintiff-Respondent,

v.

SMATCO, A PENNSYLVANIA
LIMITED PARTNERSHIP, LLC,

     Defendant-Appellant.

_____

8
                                          A-1418-17T4

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

STEPHANIE BASTEK, TRUSTEE OF THE STUGART FAMILY TRUST, DATED SEPTEMBER 30, 2009,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

WILLIAM H. WELDON, IV,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

KURT T. BOROWSKY, AS TRUSTEE FOR THE HARTINGTON J. TRUST,

9

Defendant-Appellant,

and

JPMORGAN CHASE BANK, NA,

Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES,

Plaintiff-Respondent,

v.

11 FALLS, LP, and JPMORGAN CHASE BANK, NA,

Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

BRUCE F. WESSON, AS TRUSTEE OF THE BRUCE F. WESSON 8-YEAR QUALIFIED PERSONAL RESIDENCE TRUST DATED OCTOBER 24, 2012 (50%) AND ELIZABETH M. WESSON 8-YEAR QUALIFIED PERSONAL RESIDENCE TRUST DATED

10

OCTOBER 24, 2012 (50%), AS TENANTS IN COMMON,

     Defendant-Appellant,

and

FIRST NATIONWIDE MORTGAGE CORPORATION, A DELAWARE CORPORATION, and FIRST SAVINGS BANK,

     Defendants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

STEPHEN C. WINTER, IN HIS CAPACITY AS TRUSTEE OF THE FRANK EDIE CURAN, III TRUST; STEPHEN C. WINTER, IN HIS CAPACITY AS TRUSTEE OF THE STACY CURRAN LINDSAY TRUST; and STEPHEN C. WINTER, IN HIS CAPACITY AS TRUSTEE OF THE LEWIS VALENTINE CURRAN TRUST,

     Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

EVARISTO CRUZ AND ELAINE CRUZ, HUSBAND AND WIFE,

Defendants-Appellants,

and

WELLS FARGO BANK, NA,

Defendant.
_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

LAWRENCE D. COFSKY and BETH COFSKY,

Defendants-Appellants,

and

PNC BANK, NA,

Defendant.
_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

12

Plaintiff-Respondent,

v.

BARBARA T. DENIHAN,

Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

WILLIAM B. SMITH and MARY ANN L. SMITH,

Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

LAWRENCE E. BATHGATE, II,

Defendant-Appellant,

and

COMMERCE BANK, NA; RICHARD S. SAMBOL; MAGYAR BANK,

13

Defendants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

ROBERT F. BURKE, JR.,

    Defendant-Appellant,

and

BAY HEAD IMPROVEMENT ASSOCIATION,

    Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

EDWARD CRUZ and SHARON CRUZ,

    Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

14

v.

EDWARD CRUZ, IN HIS CAPACITY AS TRUSTEE OF THE EDWARD CRUZ QUALIFIED PERSONAL RESIDENCE TRUST DATED DECEMBER 28, 2011; SHARON CRUZ, IN HER CAPACITY AS TRUSTEE OF THE SHARON CRUZ QUALIFIED PERSONAL RESIDENCE TRUST DATED DECEMBER 28, 2011,

    Defendants-Appellants,

and

BANK OF AMERICA, NA,

    Defendant.
_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

SCOTT BELAIR and SARAH BAYNE BELAIR,

    Defendants-Appellants.
_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

15

v.

PETER J. NEFF and JOAN K. NEFF,

     Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

FRANK RONAN,

     Defendant-Appellant,

and

THE CHASE MANHATTAN BANK,

     Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

ADA M. DRAESEL, AS TRUSTEE OF HERBERT G. DRAESEL, JR., QUALIFIED PERSONAL RESIDENCE TRUST; HERBERT G. DRAESEL, JR.,

AS TRUSTEE OF THE HERBERT G. DRAESEL, JR. QUALIFIED PERSONAL RESIDENCE TRUST; HERBERT G. DRAESEL, JR. AS TRUSTEE OF THE ADA M. DRAESEL, QUALIFIED PERSONAL RESIDENCE TRUST,

    Defendants-Appellants,

and

UNITED STATES SMALL BUSINESS ADMINISTRATION, AN AGENCY OF THE GOVERNMENT OF THE UNITED STATES OF AMERICA,

    Defendant.
_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

PETER C. GERHARD and KRISTEN GERHARD,

    Defendants-Appellants.
_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

17

BARBARA O. ENGLER; CAROLINE O. SMALLWOOD; MARGARET A. LANGER, TRUSTEE OF THE MARGARET ANNE LANGER 1995 REVOCABLE TRUST DATED APRIL 27, 1995,

    Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

627 EAST AVENUE BAY HEAD NJ, LLC, A NEW JERSEY LIMITED LIABILITY COMPANY; 627 EAST AVENUE BAY HEAD NJ, INC., A NEW JERSEY CORPORATION,

    Defendants-Appellants,

and

MANASQUAN SAVINGS BANK,

    Defendants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

18

v.

CYNTHIA F. CAMPBELL; MARY ELIZABETH PARKHURST, TRUSTEE UNDER THE MARY ELIZABETH PARKHURST LIVING TRUST; RICHARD G. PARKHURST, TRUSTEE UNDER THE MARY ELIZABETH PARKHURST LIVING TRUST,

 Defendants-Appellants,

and

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,

 Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

 Plaintiff-Respondent,

v.

RICHARD RAFFETTO and ARIANE RAFFETTO,

 Defendants-Appellants,

and

MERRILL LYNCH CREDIT CORP.; BANK OF AMERICA, NA; UNITED STATES SMALL BUSINESS ADMINISTRATION,

19

A-1418-17T4

Defendants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

609 EAST R&B, LLC,

      Defendant-Appellant,

and

BAY HEAD IMPROVEMENT ASSOCIATION,

      Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

WILLIAM W. FORTENBAUGH; CONSTANCE D. FORTENBAUGH, INDIVIDUALLY; CONSTANCE D. FORTENBAUGH, IN HER CAPACITY AS TRUSTEE OF THE 2010 FORTENBAUGH FAMILY TRUST,

      Defendants-Appellants.

20

_____

STATE OF NEW JERSEY, BY THE
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

     Plaintiff-Respondent,

v.

AUSTIN T. FRAGOMEN and
GWENDOLYN M. FRAGOMEN,

     Defendants-Appellants,

and

BAY HEAD IMPROVEMENT
ASSOCIATION,

     Defendant.
_____

STATE OF NEW JERSEY, BY THE
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

     Plaintiff-Respondent,

v.

LYNN P. HARRINGTON, AS TRUSTEE
OF THE LYNN P. HARRINGTON 2009
RESIDENCE TRUST DATED
DECEMBER 30, 2009 (ONE-HALF
UNDIVIDED INTEREST); KATE E.
DENIOUS AND JAMES R. EVERITT,
CO-TRUSTEES OF THE KATE
P. EVERITT QUALIFIED PERSONAL
RESIDENCE TRUST, DATED MAY 2,

2012 AND THE SAMUEL A. EVERITT QUALIFIED PERSONAL RESIDENCE TRUST, DATED MAY 2, 2012 (ONE-HALF UNDIVIDED INTEREST),

Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

CHARLES A. JANTZEN and LINDA JANTZEN,

Defendants-Appellants,

and

BAY HEAD IMPROVEMENT ASSOCIATION,

Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

KATHERINE C. OUTCALT, TRUSTEE OF THE KATHERINE C. OUTCALT TRUST DATED JUNE 9, 2003, AS AMENDED,

Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

       Plaintiff-Respondent,

v.

ALTHEA C. SMITH,

       Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

       Plaintiff-Respondent,

v.

0.414-ACRES OF LAND IN THE BOROUGH OF POINT PLEASANT BEACH, OCEAN COUNTY, NEW JERSEY; STEPHEN H. KORZENIOWSKI AND DEBORAH KORZENIOWSKI, AS TRUSTEES OF THE KORZENIOWSKI TRUST DATED DECEMBER 19, 2013, FEE OWNER,

       Defendants-Appellants,

and

CHARLES SCHWAB BANK, MORTGAGEE,

Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

W. GEORGE PARKER, AS TRUSTEE OF THE ELEANOR M. PARKER QUALIFIED PERSONAL RESIDENCE TRUST II; ELEANOR M. PARKER, AS TRUSTEE OF THE W. GEORGE PARKER QUALIFIED PERSONAL RESIDENCE TRUST II,

     Defendants-Appellants.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

BAY HEAD PROPERTY II, LLC, A NEW JERSEY LIMITED LIABILITY COMPANY,

     Defendant-Appellant.

_____

24

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

MARIAN E. COSTIGAN,

    Defendant-Appellant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

STEPHEN DISTLER and ROXANNE K. DISTLER,

    Defendants-Appellants,

and

MERRILL LYNCH CREDIT CORPORATION,

    Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

25

v.

KEVIN O'BRIEN and JEANINE O'BRIEN,

Defendants-Appellants,

and

LUXURY MORTGAGE CORP.,

Defendant.
_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

MARK FEDORCIK and HOLLY FEDORCIK,

Defendants-Appellants.
_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

GAEL HABERNICKEL IN HER CAPACITY AS TRUSTEE OF THE GAEL HABERNICKEL (1992) QUALIFIED PERSONAL SECONDARY

RESIDENCE TRUST, UTA, DTD DECEMBER 18, 1992; DUKE HABERNICKEL IN HIS CAPACITY AS TRUSTEE OF THE GAEL HABERNICKEL (1992) QUALIFIED PERSONAL SECONDARY RESIDENCE TRUST, UTA, DTD DECEMBER 18, 1992,

       Defendants-Appellants,

and

BAY HEAD IMPROVEMENT ASSOCIATION,

       Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

       Plaintiff-Respondent,

v.

HEIN GROUP, LLC,

       Defendant-Appellant,

and

BAY HEAD IMPROVEMENT ASSOCIATION,

       Defendant.

_____

A-1418-17T4

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

THE HINDELONG INVESTMENTS LIMITED PARTNERSHIP,

     Defendant-Appellant,

and

BAY HEAD IMPROVEMENT ASSOCIATION,

     Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

JUSTIN SIDRIAN and LEE SIDRIAN,

     Defendants-Appellants,

and

BAY HEAD IMPROVEMENT ASSOCIATION,

     Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

229 EAST AVENUE, LLC,

      Defendant-Appellant,

and

BAY HEAD IMPROVEMENT ASSOCIATION,

      Defendant.

_____

STATE OF NEW JERSEY, BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent,

v.

THE TYSON PARTNERS,

      Defendant-Appellant,

and

MANASQUAN SAVINGS BANK and BAY HEAD IMPROVEMENT ASSOCIATION,

      Defendants.

_____

STATE OF NEW JERSEY, BY THE
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

    Plaintiff-Respondent,

v.

BAY HEAD IMPROVEMENT
ASSOCIATION,

    Defendant-Appellant.
_____

DOCKET NO. A-1705-17T4

STATE OF NEW JERSEY, BY THE
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

    Plaintiff-Respondent,

v.

JANE WILLIAMS, AS TRUSTEE OF
THE 837 EAST AVENUE TRUST,

    Defendant-Appellant.
_____

Argued February 3, 2020 – Decided April 16, 2020

Before Judges Fasciale, Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket Nos. L-2239-17, L-1935-17, L-1936-17, L-1922-17, L-2048-17, L-2054-17, L-1923-17, L-1983-17, L-1985-17, L-2050-

17, L-1934-17, L-2046-17, L-2071-17, L-2242-17, L-2049-17, L-1987-17, L-1988-17, L-2060-17, L-2052-17, L-2061-17, L-0280-17, L-3296-15, L-1620-16, L-3340-16, L-2418-16, L-2570-16, L-2751-16, L-1619-16, L-2108-17, L-2568-16, L-3133-16, L-2950-16, L-1547-16, L-1618-16, L-2569-16, L-2969-16, L-2115-17, L-2970-16, L-2419-16, L-3132-16, L-2953-16, L-2595-17, L-2659-17, L-2598-17, L-2053-17, L-2628-17, L-1975-17, L-2215-17, L-2594-17, L-1950-16, L-2832-16, L-2852-16, L-2772-16, L-2831-16, L-2773-16, L-2650-17, L-2605-17, L-2627-17, L-2610-17, L-2609-17, L-2604-17, L-2904-17, and L-2607-17.

Anthony F. DellaPelle, John H. Buonocore, Jr., and Peter H. Wegener argued the cause for appellants in sixty-two consolidated matters (McKirdy, Riskin, Olson & DellaPelle, PC and Bathgate Wegener & Wolf, PC, attorneys; Anthony F. DellaPelle, John H. Buonocore, Jr., L. Jeffrey Lewis, and Peter H. Wegener, of counsel and on the briefs).

Christopher John Stracco argued the cause for appellant Jane Williams, as Trustee of the 837 East Avenue Trust (Day Pitney LLP, attorneys; Christopher John Stracco, of counsel and on the brief).

George G. Frino and David C. Apy, Assistant Attorney General, argued the cause for respondent (DeCotiis, FitzPatrick, Cole & Giblin, LLP, Hill Wallack, LLP, and Gurbir S. Grewal, Attorney General, attorneys; George G. Frino, Gregory Hazley, Jason M. Hyndman, and Stephen Eisdorfer, of counsel and on the brief).

The opinion of the court was delivered by

FASCIALE, P.J.A.D.

This appeal consists of sixty-two consolidated cases known as State v. 1 Howe Street Bay Head, LLC (Howe). During the pendency of this appeal, we consolidated Howe with State v. Jane Williams, Trustee 837 East Avenue Trust (Trust), totaling sixty-three consolidated cases. Defendants in Howe and Trust (collectively defendants), who are owners of beachfront property affected by Superstorm Sandy, appeal from multiple final judgments upholding the Department of Environmental Protection's (DEP's) taking of permanent easements over their properties to reduce the risk of flooding.[1]

After conducting a lengthy plenary hearing, Judge Marlene Lynch Ford found DEP did not act arbitrarily, capriciously, or unreasonably. She also concluded that DEP's taking was not the product of fraud, bad faith, or manifest abuse of power. She then entered the final judgments that are the subject of this appeal.

We affirm.

---

[1] We calendared the Howe and Trust appeals back-to-back with an individual appeal in New Jersey Department of Environmental Protection v. Midway Beach Condominium Ass'n (Midway); three consolidated appeals known as State v. 3.814 Acres of Land in the Borough of Point Pleasant Beach, State v. 10.041 Acres of Land in the Borough of Point Pleasant Beach, and State v. .808 Acres of Land in the Borough of Point Pleasant Beach (collectively Risden's); and a pro se appeal entitled State v. Arthur Williams (A-1484-17) (Williams). On today's date, we rendered opinions in Midway, Risden's, and Williams.

I.

Before we address defendants' arguments, we will briefly summarize the pertinent procedural history and facts leading to these appeals.

In State v. North Beach 1003, LLC, 451 N.J. Super. 214, 223 (App. Div. 2017), we held DEP had the authority to "condemn private property to take perpetual easements for shore protection purposes," and that "easements that allow for publicly funded beach protection projects can include public access and use." In North Beach, the shore protection system at issue—the same as here—is known as the Manasquan Inlet to Barnegat Inlet Hurricane and Storm Damage Reduction Project (the Project). Id. at 224-25. Many of the facts in North Beach are similar to those in this appeal, but the properties here are protected by a "revetment." Id. at 224-26.

A revetment is a type of storm-protection structure designed to dissipate wave energy and protect structures and people located inland. The revetment originally dates back to the 1800s, consisting of stone boulders, sixteen-to-eighteen-feet high and ninety-feet wide, covered with sand, dunes, and vegetation. Beachfront property owners privately funded the revetment's improvement, spending approximately seven-to-eight million dollars on enhancements. Because of these expenditures, the revetment, known as the

Tri-Borough revetment, is now 1.8 miles long and protects Bay Head, Mantoloking, and Point Pleasant Beach.

Defendants contend the revetment sufficiently protects against flooding and obviates the need for the Project. When the defendants in North Beach filed their appeals, the judge had not yet ruled on DEP's complaints to take easements over the properties under dispute here. Instead, the judge carved out an exception for properties protected by the revetment, and she scheduled a plenary hearing to determine whether these properties were already sufficiently protected as contemplated by the Project's shore protection system. Id. at 227 n.2.

In 2002, the Army Corps of Engineers (Army Corps) produced a detailed feasibility study (the 2002 study), considering the costs and benefits of the Project, which entailed a dune and berm system spanning fourteen miles along northern Ocean County, from Berkeley Township to Point Pleasant Beach. The dune and berm system is designed to mimic a natural beach, with sandy coast and dunes of sand and sediment. The 2002 study evaluated potential damages, that would have occurred with and without the Project, by considering the severity of different storms. It categorized the storms based on the probability of such storms occurring. For example, a two-year storm was not considered very severe and had the probability of occurring once every two

years, whereas a 100-year storm was considered much more severe and had a one percent chance of happening every year. The 2002 study assumed the revetment would fail in a 200-year storm.

In 2007, Congress authorized the Project, but did not appropriate funds. Following Sandy, Congress passed the Disaster Appropriations Act of 2013 (the Sandy Act), Pub. L. No. 113-2, 127 Stat. 4, which again authorized the Army Corps to construct the Project and provided federal funding at that time. As part of the Project, the State and federal governments expected to share costs for periodic renourishment—adding sand to the dunes after beach erosion—approximately every four years.

DEP had the responsibility of acquiring the physical access to beachfront properties necessary for the Project's construction, ensuring that it only used federal funds for properties with public access to the beaches. On September 25, 2013, Governor Chris Christie signed Executive Order 140 (EO140), which created the Office of Flood Hazard Risk Reduction (the Flood Office) within DEP for the purpose of "rapid acquisition of property" to be used to construct the Project. To proceed with this Project, the Army Corps required the benefits-to-costs ratio should be higher than 1.0—benefits were greater than costs. On July 18, 2014, DEP and the Army Corps entered into an agreement to construct the Project.

Throughout the revetment's history, beachfront homeowners voluntarily hired contractors to "sand push"—move sand up the dunes to ensure that the revetment stayed covered. These homeowners directed sand pushes up to three times per year. This revetment protected the properties that abutted it during Sandy. However, significant damage occurred at the street ends and where there were gaps in the revetment.

After Sandy, these beachfront property owners hired engineer Andrew Raichle, who opined Bay Head suffered "substantial damage to the public infrastructure." Raichle approached DEP on behalf of these property owners, seeking permission to rebuild, extend, and fortify the revetment. Upon approval, the property owners spent substantial amounts of money to extend the revetment in the southern and northern directions and repair the gaps at street ends.

## II.

Defendants generally argue that the judge's findings are not supported by the record. The judge granted defendants a plenary hearing because they established a prima facie showing of arbitrariness. However, defendants must demonstrate fraud, bad faith, or manifest abuse to reverse an eminent domain taking. The judge conducted an eight-day plenary hearing, and rendered a

fifty-four-page written opinion detailing her credibility and factual findings and conclusions of law. Our standard of review is well-settled.

We review questions of law de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We defer to the trial judge's factual findings. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974). We reverse such factual findings only if "'they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence.'" Ibid. (quoting Fagliarone v. Township of North Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). But a trial judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan, 140 N.J. at 378.

The judge recognized that DEP reasonably determined the Project's berm and dune system provided the best protection to private and public property from coastal storm flooding, despite the Tri-Borough revetment. The judge found DEP considered the revetment before deciding to proceed with the Project. Although DEP authorized private homeowners to make improvements to the revetment after Sandy, it did so with the express understanding these improvements would merely supplement protection offered by the impending

Project. The judge found that DEP reasonably concluded the Project was beneficial and economically viable to the State.

Moreover, the judge found that the Project protected the beach seaward of the Tri-Borough revetment, an area that was not already protected. The Project anticipated preventing the end and gap effects. If excluded from the Project, these gaps would impair shore protection north and south of defendants' properties. Specifically, the judge recognized DEP reasonably concluded that

> additional protections in the area of the [revetment] would be necessary to make the entire [P]roject more effective, and to protect the interests of property owners who may be damaged by end or gap effects. In addition, the [P]roject is designed to have a sacrificial berm that would provide additional beach recreational opportunities, together with the many intangible benefits, including confidence in the Jersey Shore as a travel destination.

Experts, DEP employees, Army Corps employees, and property owners testified. The record supports the judge's findings and conclusions.

Raichle, a coastal science and engineering expert, authored a report on behalf of defendants, in which he conceded the revetment was designed to protect structures and people landward of the beach and, therefore, would not protect against beach erosion. When discussing the damage caused by Sandy in Bay Head, Raichle stated that it was superficial—not structural—exterior

38

damage related to base flooding. But on cross-examination, he admitted that he did not include properties that were demolished or had significant damage (totaling more than fifty percent of the home's value) in his damage assessment. However, he described the damage as substantial when he approached DEP for permission to rebuild the revetment.

Robert Young, a coastal science expert, also submitted a report on behalf of defendants. According to Young, the Project's benefits-to-costs ratio was only 1.2, and in the future, the cost of renourishment would be prohibitive. Young concluded that "[e]liminating the [P]roject from the [r]evetment [p]roperties will not endanger other property owners in the area in any demonstrable way." He agreed that where a beach has chronic erosion, a revetment could exacerbate the problem; but here, he opined there was no evidence of beach erosion.

However, Robert Lowinski, a coastal engineering expert, filed reports on behalf of DEP, rebutting the claims of Young and Raichle and comparing the damage that would occur with and without the Project. He stated that Bay Head experienced periods of accretion and erosion, and that a number of factors would determine the appropriate renourishment interval. Likewise, Thomas Herrington, a beach science and coastal engineering expert, also prepared a report on behalf of DEP, equating what the damage would be with

and without the Project for different storms. He concluded that the revetment alone could not provide as much protection as the Project.

Herrington also disagreed with Raichle and Young that Sandy was a 500-year storm, rather he thought that it was more likely a 100-year storm. In making this determination, Herrington used modeling, which accounts for air pressure, wind, waves and complex physics, whereas Raichle simply considered water measurements at Coast Guard stations. Herrington and the Army Corps agreed that the Project was not designed to protect against a 200-year or 500-year storm.

John Paul Woodley, an Army Corps statutory/regulatory policy matters expert, noted that, as far as funding future renourishment, the Army Corps would place higher priority on a project with a higher benefits-to-costs ratio. Renourishment funding depended on the availability of federal funds. Also, according to Woodley, the Army Corps policy provided that the Project could be built on privately owned land so long as there was public access to the beach.

Keith Watson, an Army Corps project manager, prepared a report concluding that, notwithstanding the revetment, Bay Head suffered serious damage from Sandy because the storm "overtopped" the revetment. This was evidenced by the significant amount of sand in the streets after Sandy. Watson

concluded that the revetment should be combined with the berm and dune system to strengthen the Project.

According to Watson, emergency funds would be available if renourishment was necessary and the federal government did not allocate funds. He opined that the Project had a better chance of surviving if the entire fourteen-mile dune and berm system was implemented without gaps. The Project anticipated covering the revetment's front with the dune and berm system but would not affect the revetment's back side. Watson stated the easements were necessary to secure funding because they guaranteed public access to the beaches.

Robert Selsor, an economist and an Army Corps supervisor, filed a report discussing the Project's economic benefits and focusing on the cost of damages to existing structures. Selsor disagreed with Raichle's determination that the benefits-to-costs ratio of 1.2 was based upon an expectation that the revetment would fail.

According to Selsor, the 2002 study compared the with-and-without-the-Project conditions for different storms and determined the probability of resulting damage. The analysis considered the entire proposed 13.7-mile length of the Project. The benefits-to-costs ratio was the only important factor to the Army Corps when determining the Project's feasibility.

A-1418-17T4

William Dixon, DEP's Bureau of Coastal Engineering manager, discussed how prior to Sandy, DEP sought to partner with the Army Corps because the agency believed that doing so would provide the most cost-effective storm protection. According to Dixon, a uniform system would ensure that adjacent areas have maximum protection.

David Rosenblatt, assistant commissioner of DEP and director of DEP's Flood Office, discussed the Project's history. After Sandy and EO140, DEP no longer looked to municipalities to acquire property rights. Under the Project, federal funding paid for 100% of many beach repairs in New Jersey, but in northern Ocean County, the cost share was 65% federal and 35% State, with the State paying 50% of renourishment. The State's share could be paid in installments for thirty years. DEP did not do a separate benefits-to-costs analysis but instead, relied on the Army Corps studies. Once DEP condemns the privately owned beach property, it either assigns maintenance of the beach to a local municipality or assumes responsibility for maintenance, cleaning, and lifeguards. Rosenblatt agreed that protecting the State's interest in tourism at the shore motivated DEP to participate in the Project. According to Rosenblatt, DEP never considered the repaired revetment to be a stand-alone plan, but instead, envisioned it in consonance with the Project to provide more stability.

The judge concluded that DEP established the "merits of the [P]roject outweighed the investment." The judge found that DEP's determination was not arbitrary, capricious, or unreasonable even if the Project was unnecessary in part due to the revetment. The judge considered defendants' arguments that the Project was "superfluous" to be "very compelling," but noted that reasonable people could disagree about the best way to address flooding at the New Jersey shore.

The judge accepted Raichle's opinion that the Tri-Borough revetment's modifications enhanced the historic revetment's storm protection. The judge found significant Raichle's statement that the revetment provided protection to landward structures and infrastructure, but not the beach. The judge's finding is supported by substantial credible evidence in the record.

### III.

We reject defendants' argument that DEP's takings were arbitrary, capricious, or unreasonable. The judge correctly found that the takings were not arbitrary, capricious, unreasonable, or a manifest abuse of power, even though DEP modified the Project in other areas but refused to do so in Bay Head. The judge noted that DEP relied on reasonable expert opinions.

Defendants cite Texas East Transmission Corp. v. Wildlife Preserves, Inc., 48 N.J. 261, 269 (1966), for the notion that a taking must be limited to

43                                                    A-1418-17T4

what is necessary. In that case, the Court established that a judge must consider if there are alternative options available as part of his or her determination as to whether the taking of private property is arbitrary. Id. at 269-75.

> Ordinarily where the power to condemn exists the quantity of land to be taken as well as the location is a matter within the discretion of the condemnor. The exercise of that discretion will not be interfered with by the courts in the absence of fraud, bad faith or circumstances revealing arbitrary or capricious action. In this connection we hold the view that when private property is condemned the taking must be limited to the reasonable necessities of the case, so far as the owners of the property taken are concerned.
>
> [Id. at 269 (citations omitted).]

The taking needs to be limited to the "reasonable necessities" of the case. Ibid. Defendants argue that here, the taking was not a necessity because the revetment provided sufficient protection from flooding.

But the experts disagreed, stating the revetment alone did not provide sufficient protection to the beach or to the properties landward. Even defendants' expert, Raichle, conceded that the revetment did not protect the beach, but only structures behind it. Further, Dixon emphasized that New Jersey has a policy favoring soft structures, such as the dune and berm system, as opposed to hard ones—such as the revetment—in terms of shore protection. He testified:

It's an actual regulation and within the Rules on Co[a]stal Zone Management for Coastal Engineering Purposes[,] soft structures are favored and the hierarchy of going through the rule is <u>you have to . . . prove that a soft structure won't work in order to obtain a permit for a hard structure</u>.

[(Emphasis added).]

Defendants argue that DEP followed EO140 to avail itself of federal funding without considering the revetment's post-Sandy improvements. According to defendants, EO140 is not sufficient to establish the Project's necessity. Moreover, the judge made factual findings that permitted DEP to take the easements because doing so would make the entire Project more effective and would provide intangible benefits, such as recreational opportunities. Defendants nevertheless argue that these reasons were inadequate to support DEP's exercise of eminent domain.

EO140 hastened the process of acquiring the properties by permitting the Flood Office to directly condemn the properties without participation of the municipalities, contrary to past procedure. EO140 did not confer any condemnation rights on DEP. Moreover, the judge found valid reasons for the condemnations, including the Project's stability, the viability of the New Jersey shore as a tourist destination, and DEP's desire to gain access to maximum federal funding for shore protection. As the judge found, DEP determined the fourteen-mile Project was necessary after reviewing expert reports and Army

Corps studies, rather than EO140. The validity of EO140 is not on appeal here.

Moreover, the exercise of DEP's discretion will only be interfered with upon a showing of fraud, bad faith, or arbitrary or capricious action. Wildlife Preserves, 48 N.J. at 269. Absent that showing, the judge may not reverse a condemnation even if defendants disagree with DEP's reason for the takings. Here, defendants fail to establish the required standard.

Defendants contend that they are entitled to special consideration because they privately funded the revetment's enhancements to improve shore protection. According to defendants, they dedicated their property to public service through the revetment's creation and maintenance. The judge addressed this argument and determined that it was meritless, given that the property owners themselves were the primary beneficiaries of the revetment, rather than the public. While the judge noted that the public benefitted from the revetment, she distinguished Wildlife Preserves, where private property owners maintained the property for wildlife preservation—a communal benefit. Id. at 266-67. We agree with the judge that the revetment's maintenance provided more of a private than a public benefit, inasmuch as the revetment protected properties that abutted it, but did not protect the beach or landward structures.

Defendants argue that DEP's decision to take their properties is not entitled to deference because the agency did not engage in a deliberative process, but merely took the properties pursuant to EO140 in order to qualify for federal funding. According to defendants, the judge erred by stating that the taking was meant to effectuate EO140 because eminent domain is a legislative function, and an executive order cannot authorize a condemnation. Contrary to defendants' assertions, the judge stated that EO140 "also gave [DEP] responsibility to acquire through eminent domain property '[]vital to [Sandy] reconstruction efforts.'" We understand the judge to mean that EO140 gave DEP—rather than municipalities—the right to acquire these properties, despite past procedures.

Defendants argue that DEP never analyzed whether the Project's benefits were worthwhile, instead relying on Army Corps studies and feasibility reports.

It is true that DEP executives wanted to obtain federal funding for the Project. We nevertheless disagree with defendants, and believe DEP had a valid reason for the takings. Prior to Sandy, DEP was concerned with shore protection, but was not in a position to fund the Project. Expert Rosenblatt testified:

> [U]ntil Sandy, the [Army C]orps had never gotten an appropriation large enough to build the entire

47

[P]roject. And, therefore, 35[%] of what the [Army C]orps would get, [fifteen], [twenty] million dollars, was not hard for us to meet every year. With this [P]roject, . . . we don't have to pay . . . 35[%] up front. . . . [T]he partnership agreement we signed with the [Army C]orps in 2014 . . . allowed us to make payments on the installment plan rather than paying the 35[%] up front.

After Sandy, Congress passed the Sandy Act, which earmarked federal funds for the Project. The fact that DEP condemned properties to effectuate the largely federally funded Project is not indicative of fraud, bad faith, or arbitrary or capricious action. DEP legitimately took the properties to qualify for the federal funds that would enable greater shore protection—a communal benefit.

Defendants argue that DEP's takings will prohibit homeowners from maintaining the revetment and protecting their properties. Specifically, the homeowners are concerned that they will no longer be permitted to perform the sand push, ultimately resulting in erosion. They assert there is no guarantee that DEP will properly maintain the revetment. According to defendants, their revetment maintenance has been effective, and DEP's proposed renourishment is less reliable.

First, defendants' contention is misplaced. At the hearing, Rosenblatt testified, "[t]hey have the ability . . . under current permit conditions . . . to move sand, under the new easement condition. Under the easement, . . . they

48

would have the same ability with a permit." He noted that property owners would typically be granted the required permit so long as they do not "compromis[e] . . . that beach by moving that s[a]nd around unnecessarily."

As to defendants' second contention, testimony indicated that emergency funds would be available for renourishment. Although it is true that the property owners have maintained the revetment, the dune and berm system offers more protection to the beaches and the landward properties. Thus, defendants have not established that DEP's takings were arbitrary, capricious, fraudulent, or made in bad faith.

IV.

Defendants argue that N.J.S.A. 12:3-64 and State v. Archer, 107 N.J. Super. 77 (1969), do not permit DEP to take easements of their privately owned properties for public use. We addressed defendants' arguments on this issue in North Beach, 451 N.J. Super. at 230-32, 237. We reiterate that N.J.S.A. 12:3-64 and Archer support DEP's authority to take the easements. The judge addressed these arguments in her opinion leading to North Beach, and determined that N.J.S.A. 12:3-64 and Archer do not prevent DEP from taking the easements. North Beach, 451 N.J. Super. at 226-28. We rely on North Beach and add the following.

DEP has the power to condemn pursuant to the Eminent Domain Act (EDA), N.J.S.A. 20:3-1 to -50. See, e.g., N.J.S.A. 12:3-64. The Legislature enacted the EDA to integrate and standardize the more than 300 statutes authorizing the exercise of eminent domain. Township of West Windsor v. Nierenberg, 150 N.J. 111, 126 (1997). The EDA is not an enabling statute, but rather, provides a uniform procedure for all entities with the power to condemn to follow. Township of Hillsborough v. Robertson, 260 N.J. Super. 37, 43 (Law Div. 1992).

N.J.S.A. 12:3-64 provides:

> The Department of Conservation and Economic Development may acquire title, in fee simple, in the name of the State, by gift, devise or purchase or by condemnation in the manner provided in chapter one of [the EDA] to any lands in the State, including riparian lands, of such area and extent which, in the discretion of the department, may be deemed necessary and advisable. All lands so acquired shall be subject to the jurisdiction and control of the department.
>
> . . . .
>
> Upon the department exercising the right of condemnation and entering upon and taking land in advance of making compensation therefor it shall proceed to have the compensation fixed and paid to the owner, as provided in said chapter one of the [EDA].
>
> Lands thus acquired shall be used for the improvement or development of any waterway, stream, river or

50

creek or any waterfront or oceanfront property or to give access to any lands of the State.

[(Emphasis added).]

Defendants argue that N.J.S.A. 12:3-64 neither authorizes DEP to condemn easements for storm-protection purposes nor to create public beaches on private property. Instead, according to defendants, the statute only permits DEP to acquire title in fee simple, rather than an easement. This court in North Beach held that N.J.S.A. 12:3-64 expressly provides DEP with the authority to condemn properties for shore protection and authorizes DEP to acquire "any type of property interest," including a perpetual easement to protect the coastline. 451 N.J. Super. at 238. Because DEP could have taken the property in fee simple, it also had discretion to take a lesser interest, such as an easement with a right of public access and use. Id. at 240.

Defendants argue that the public trust doctrine does not support this court's interpretation of N.J.S.A. 12:3-64 in North Beach. In North Beach, we cited Matthews v. Bay Head Improvement Ass'n, 95 N.J. 306, 322 (1984), for the notion that the public trust doctrine requires public access to the shoreline. Id. at 239-41. North Beach held that the public trust doctrine requires that the public have access to the beach when DEP uses public funds to create a dry sand area. Id. at 241.

According to the public trust doctrine, the State holds "'ownership, dominion and sovereignty' over tidally flowed lands 'in trust for the people.'" Hackensack Riverkeeper, Inc. v. N.J. Dep't of Envtl. Prot., 443 N.J. Super. 293, 303 (App. Div. 2015) (quoting City of Long Branch v. Jui Yung Liu, 203 N.J. 464, 474 (2010)). Access to the sea encompasses "access to and use of privately[]owned dry sand areas as reasonably necessary." Id. at 304 (quoting Matthews, 95 N.J. at 326). We agree with the judge that the public trust doctrine requires the public to have access to the beaches.

Defendants argue that the New Jersey Supreme Court has never compelled a private property owner to provide public use and access to the beach when adequate public access already exists. But here, providing and ensuring public access to the waterfront is a condition of DEP receiving federal funding for the Project, thus DEP must acquire the right to provide public access to the beaches. Without this language in the easements, defendants could eventually prevent public access to the waterfront.

Defendants dispute this court's determination in North Beach that N.J.S.A. 12:3-64 permits the condemning authority to acquire any interest in the property it takes. 451 N.J. Super. at 232. In North Beach, this court stated that DEP instead derives its power to condemn from N.J.S.A. 12:3-64, and that

statute permits DEP to acquire any interest in the property it condemns.  Ibid.

In support, this court cited N.J.S.A. 20:3-20 which provides:

> The title to property condemned and acquired by the condemnor hereunder, shall be a title in fee simple, free and discharged of all right, title, interest and liens of all condemnees, and shall include all the right, title and interest of each condemnee therein, provided, however, that if the complaint or any amendment thereof shall specify a lesser title, the lesser title so specified shall be the title condemned and acquired.
>
> [Id. at 233 (emphasis added).]

In North Beach, we cited Town of Kearny v. Discount City of Old Bridge, Inc., 205 N.J. 386 (2011), for the notion that a condemning authority may condemn a leasehold or an easement.  Id. at 233.

Defendants examine the legislative history of N.J.S.A. 12:6A-1 and conclude that the statute permits DEP to engage in shore protection, but not condemnation.  But in North Beach, this court held that DEP's shore protection responsibilities and its condemning authority should be read in pari materia. Id. at 235-37.  Moreover, Archer, 107 N.J. Super. at 77, permitted DEP's predecessor to condemn private property for shore protection, and as this court explained in North Beach, that holding has never been held to be in error or revisited by the Legislature.  North Beach, 451 N.J. Super. at 237.

Defendants argue that in Archer, this court read N.J.S.A. 12:3-64 incorrectly, and they contend the issue of DEP's right to condemn private

property for shore protection was not an issue in that case. But as we pointed out in North Beach,

> [i]n the almost fifty years since Archer was decided, the Legislature has taken no action to amend the statute, nor has it given any indication that this court was mistaken in Archer. Accordingly, the Legislature has implicitly endorsed our interpretation that . . . DEP has broad powers to protect the New Jersey shoreline.
>
> [Id. at 237.]

Thus, we agree with the holding in North Beach that N.J.S.A. 12:3-64 permits DEP to take easements on private property for shore protection, and Archer further supports that determination.

## V.

Defendants argue that DEP failed to satisfy the prelitigation requirements in N.J.S.A. 20:3-6 inasmuch as DEP did not engage in bona fide negotiations by failing to consider the revetment, and they contend that the appraiser made several mistakes in conducting its appraisal. The judge concluded that DEP engaged in bona fide negotiations, even though the parties disagreed as to the proper value of the easements. We have no basis to disrupt the judge's ruling that DEP engaged in bona fide negotiations, which is supported by the record.

54

The EDA requires a condemnor to engage in bona fide negotiations with the property owner. N.J.S.A. 20:3-6. N.J.S.A. 20:3-6 encourages acquisitions without litigation, thus saving both the condemnor and the condemnee the expense and delay of litigation. Casino Reinvestment Dev. Auth. v. Katz, 334 N.J. Super. 473, 481 (Law Div. 2000). The complaint is dismissed if the acquiring entity fails to comply with the prelitigation requirements. Ibid.

The statute does not define bona fide negotiations, but our Supreme Court established that such negotiations include an offer in writing setting forth the property interest to be acquired, the compensation to be paid, and a reasonable disclosure of how the amount was calculated. See State by Comm'r of Transp. v. Carroll, 123 N.J. 308, 316-17 (1991). Bona fide negotiations are especially necessary for "minor" takings to protect unsophisticated owners who might not be in a position to hire lawyers or appraisers. See ibid. A one-price offer does not, by definition, violate N.J.S.A. 20:3-6 so long as the condemnor puts forth its best offer—an offer for the full appraised value of the property—before litigation is instituted. Id. at 318-19; Casino, 334 N.J. Super. at 483.

The reasonableness of bona fide negotiations centers on the adequacy of the appraisal information and whether it sufficiently explains the valuation method for an average property owner to engage in negotiations. Carroll, 123

N.J. at 321. A one-price offer procedure is acceptable so long as the appraisal information is comprehensible and includes a valuation methodology. Id. at 323. Just compensation is based on the property owner's loss, not the condemning authority's gain. Casino, 334 N.J. Super. at 484. Just compensation is the difference between the value of the property before and after the taking. Harvey Cedars v. Karan, 214 N.J. 384, 417 (2013).

If the negotiation process fails to settle the matter, the condemnor may file a complaint to condemn and seek an order for the appointment of commissioners to fix the amount of just compensation. N.J.S.A. 20:3-8. Commissioners conduct a hearing to determine compensation. N.J.S.A. 20:3-12.

Defendants argue that DEP never intended to pay property owners and did not engage in bona fide negotiations. In support, defendants point to the following facts: Prior to the property appraisals, the Army Corps determined that compensation would be nominal because of the Project's benefits; all appraisers except one, who was subsequently terminated, concluded that defendants were entitled to nominal compensation; the properties were already protected by the revetment; the judge concluded that the revetment's protection to defendants' properties was equal or superior to the Project's protection; and DEP filed its condemnation complaints after the matter was already in

litigation and did not respond to evidence that its offers were not made in good faith.

In support of their position, defendants cite County of Morris v. Weiner, 222 N.J. Super. 560, 563 (App. Div. 1988), wherein this court determined that the condemning authority did not engage in bona fide negotiations by offering an amount far lower than what a bank recently appraised the property for, and when the authority presented a "take it or leave it" approach. But that case can be distinguished because here, defendants have not provided any other property appraisal.

In North Beach, this court evaluated whether DEP engaged in bona fide negotiations, and noted that the appraiser took each individual property and balanced the Project's benefit to the property against the losses to arrive at a bona fide offer. 451 N.J. Super. at 244. In addition, this court concluded that defendants did not offer credible information supporting their contention that DEP's offer was too low. Id. at 245.

We disagree with defendants that DEP did not engage in bona fide negotiations. For one thing, the appraisers provided a description of the properties and detailed explanations as to how they arrived at their conclusions, satisfying bona fide negotiation requirements. See Carroll, 123 N.J. at 316-17. Also, defendants' experts arrived at similar conclusions. And

57

defendants fail to provide any quantifiable data to the contrary. Even though the properties were protected by the revetment, it was reasonable for the appraisers to conclude the properties would be more valuable after the condemnation because the Project overall would enhance shore protection for the entire area. Here, similarly, the appraisers analyzed the costs and benefits to each property, but defendants offered no contrary appraisals. The judge's finding that DEP engaged in bona fide negotiations is supported by substantial evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION